## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF  OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| THE KROGER CO. et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No.  1:10-CV-161-SSB |
| v. | § | |
| | § | Judge Sandra S. Beckwith |
| EXCENTUS CORPORATION, a Texas | § | |
| Corporation, | § | **JURY DEMAND** |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## EXCENTUS CORPORATION'S FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendant and Counter-Plaintiff Excentus Corporation ("Excentus") files its First Amended Answer and Counterclaims to the First Amended Complaint for Declaratory Judgment ("Complaint") filed by The Kroger Company ("Kroger") and various subsidiaries ("the Kroger Subsidiaries") (collectively "Plaintiffs") and for same would show the Court as follows:

### NATURE OF THE ACTION

1. Excentus admits that the Plaintiffs filed this Complaint alleging claims of non-infringement and invalidity of various patents owned by Excentus.

### JURISDICTION AND VENUE

2. Excentus admits that an immediate and substantial controversy exists with respect to some of the patents owned by Excentus.

3. Excentus admits that this Court has subject matter jurisdiction over this action.

4.      Excentus denies that venue is proper in this District and denies that its business in Ohio and in this District is sufficient for personal jurisdiction, but Excentus recognizes that the Court previously denied Excentus's motions to dismiss and to transfer venue based on those issues.

**PARTIES**

5.      Excentus admits the allegations in paragraph 5 of the Complaint.

6.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint and therefore denies same.

7.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint and therefore denies same.

8.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint and therefore denies same.

9.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint and therefore denies same.

10.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint and therefore denies same.

11.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint and therefore denies same.

12.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint and therefore denies same.

13.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and therefore denies same.

14.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint and therefore denies same.

15.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint and therefore denies same.

16.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint and therefore denies same.

17.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint and therefore denies same.

18.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint and therefore denies same.

19.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint and therefore denies same.

20.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint and therefore denies same.

21.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint and therefore denies same.

22.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint and therefore denies same.

23.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint and therefore denies same.

24.      Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint and therefore denies same.

25.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint and therefore denies same.

26.     Excentus admits that it is a corporation duly organized and existing under the laws of the State of Texas.  Excentus denies the remaining allegations in paragraph 26 of the Complaint.

## CONTROVERSY BETWEEN PLAINTIFFS AND EXCENTUS

27.     Excentus admits the allegations in paragraph 27 of the Complaint

28.     Excentus admits the allegations in paragraph 28 of the Complaint.

29.     Excentus admits the allegations in paragraph 29 of the Complaint.

30.     Excentus admits the allegations in paragraph 30 of the Complaint.

31.     Excentus admits the allegations in paragraph 31 of the Complaint.

32.     Excentus admits the allegations in paragraph 32 of the Complaint.

33.     Excentus admits the allegations in paragraph 33 of the Complaint.

34.     Excentus admits the allegations in paragraph 34 of the Complaint.

35.     Excentus admits the allegations in paragraph 35 of the Complaint.

36.     Excentus admits the allegations in paragraph 36 of the Complaint.

37.     Excentus admits the allegations in paragraph 37 of the Complaint.

38.     Excentus admits the allegation in paragraph 38 of the Complaint.

39.     Excentus admits that Kroger has announced that its customers can redeem fuel rewards at participating Shell stations.   Excentus is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 39 of the Complaint and therefore denies same.

40.     Excentus admits that it offered Kroger a license to the Excentus patent portfolio and that licensing negotiations were not successful.  Excentus denies the remaining allegations in paragraph 40 of the Complaint.

41.     Excentus admits that by letter dated March 3, 2010, Excentus President and CEO Dickson Perry informed Kroger Executive Vice President Don Becker, in response to a question posed by Mr. Becker, that further negotiations should be focused on consummating a licensing agreement between Excentus and Kroger.  In response to a suggestion by Mr. Becker that Kroger would legally challenge the validity of the Excentus patent portfolio, which Kroger has now done, Mr. Perry stated that if Kroger initiated such a challenge, Excentus would defend the validity of its patents, establish Kroger's infringement, and seek maximum damages for Kroger's willful infringement.  Excentus denies the remaining allegations in paragraph 41 of the Complaint.

42.     Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint and therefore denies same.

## **EXCENTUS CONTACTS WITH THE JURISDICTION**

43.     Excentus admits the allegations in paragraph 43 of the Complaint.

44.     Excentus admits that it has marketed fuel discount systems in Ohio and in this judicial district by virtue of offering licenses to entities operating in Ohio and in this judicial district, including Kroger.  Excentus further admits that it remotely supports the fuel discount systems of its licensees that are in operation in Ohio and in this judicial district.  Excentus denies the remaining allegations in paragraph 44 of the Complaint.

45.     Excentus admits that it has offered licenses to companies operating in this judicial district, including Kroger, and has travelled to the Southern District of Ohio in this capacity.  Excentus denies the remaining allegations in paragraph 45 of the Complaint.

46.     Excentus admits that it derives ongoing revenue from licensees that are doing business in this judicial district.  Excentus denies the remaining allegations in paragraph 46 of the Complaint.

47.     Excentus admits the allegations in paragraph 47 of the Complaint.

48.     Excentus admits the allegations in paragraph 48 of the Complaint.

49.     Excentus admits the allegations in paragraph 49 of the Complaint.

50.     Excentus admits the allegations in paragraph 50 of the Complaint.

51.     Excentus admits the allegations in paragraph 51 of the Complaint.

52.     Excentus admits the allegations in paragraph 52 of the Complaint.

53.     Excentus admits the allegations in paragraph 53 of the Complaint.

54.     Excentus admits the allegations in paragraph 54 of the Complaint.

55.     Excentus admits the allegations in paragraph 55 of the Complaint.

56.     Excentus admits to being involved in transactions that include a fuel discount at sites where its system is present.  Excentus denies the remaining allegations in paragraph 56 of the Complaint.

57.     Excentus denies the allegations in paragraph 57 of the Complaint.

58.     Excentus admits the allegations in paragraph 58 to the extent that residents includes Kroger.

59.     Excentus denies the allegations in paragraph 59 of the Complaint.

## <u>CLAIM I: NONINFRINGEMENT OF THE '984 PATENT</u>

60.     Excentus incorporates its responses to paragraphs 1-59 above as if fully set forth herein.

61.     Excentus denies the allegations in paragraph 61 of the Complaint.

62.     Excentus denies the allegations in paragraph 62 of the Complaint.

## <u>CLAIM II: INVALIDITY OF THE '984 PATENT</u>

63.     Excentus incorporates its responses to paragraphs 1-62 above as if fully set forth herein.

64.     Excentus admits the allegations in paragraph 64 of the Complaint.

65.     Excentus admits the allegations in paragraph 65 of the Complaint.

66.     Excentus admits the allegations in paragraph 66 of the Complaint.

67.     Excentus denies the allegations in paragraph 67 of the Complaint.

68.     Excentus denies the allegations in paragraph 68 of the Complaint.

69.     Excentus denies the allegations in paragraph 69 of the Complaint.

70.     Excentus denies the allegations in paragraph 70 of the Complaint.

71.     Excentus admits the allegations in paragraph 71 of the Complaint.

72.     Excentus admits the allegations in paragraph 72 of the Complaint.

73.     Excentus denies the allegations in paragraph 73 of the Complaint.

74.     Excentus denies the allegations in paragraph 74 of the Complaint.

75.     Excentus denies the allegations in paragraph 75 of the Complaint.

76.     Excentus denies the allegations in paragraph 76 of the Complaint.

77.     Excentus denies the allegations in paragraph 77 of the Complaint.

78.     Excentus admits the allegations in paragraph 78 of the Complaint.

79.     Excentus admits the allegations in paragraph 79 of the Complaint.

80.     Excentus admits the allegations in paragraph 80 of the Complaint.

81.     Excentus denies the allegations in paragraph 81 of the Complaint.

82.     Excentus denies the allegations in paragraph 82 of the Complaint.

83.     Excentus admits the allegations in paragraph 83 of the Complaint.

84.     Excentus denies the allegations in paragraph 84 of the Complaint.

85.     Excentus denies the allegations in paragraph 85 of the Complaint.

86.     Excentus denies the allegations in paragraph 86 of the Complaint.

87.     Excentus denies the allegations in paragraph 87 of the Complaint.

**CLAIM III: NONINFRINGEMENT OF THE '128 PATENT**

88.     Excentus incorporates its responses to paragraphs 1-87 above as if fully set forth herein.

89.     Excentus denies the allegations in paragraph 89 of the Complaint.

90.     Excentus denies the allegations in paragraph 90 of the Complaint.

**CLAIM IV: INVALIDITY OF THE '128 PATENT**

91.     Excentus incorporates its responses to paragraphs 1-90 above as if fully set forth herein.

92.     Excentus admits the allegations in paragraph 92 of the Complaint.

93.     Excentus admits the allegations in paragraph 93 of the Complaint.

94.     Excentus denies the allegations in paragraph 94 of the Complaint.

95.     Excentus denies the allegations in paragraph 95 of the Complaint.

96.     Excentus denies the allegations in paragraph 96 of the Complaint.

97.     Excentus denies the allegations in paragraph 97 of the Complaint.

98.     Excentus admits the allegations in paragraph 98 of the Complaint.

99.     Excentus denies the allegations in paragraph 99 of the Complaint.

100.    Excentus denies the allegations in paragraph 100 of the Complaint.

101.    Excentus denies the allegations in paragraph 101 of the Complaint.

102.    Excentus denies the allegations in paragraph 102 of the Complaint.

## CLAIM V: NONINFRINGEMENT OF THE '081 PATENT

103.    Excentus incorporates its responses to paragraphs 1-102 above as if fully set forth herein.

104.    Excentus denies the allegations in paragraph 104 of the Complaint.

105.    Excentus denies the allegations in paragraph 105 of the Complaint.

## CLAIM VI: INVALIDITY OF THE '081 PATENT

106.    Excentus incorporates its responses to paragraphs 1-105 above as if fully set forth herein.

107.    Excentus admits the allegations in paragraph 107 of the Complaint.

108.    Excentus admits the allegations in paragraph 108 of the Complaint.

109.    Excentus denies the allegations in paragraph 109 of the Complaint.

110.    Excentus denies the allegations in paragraph 110 of the Complaint.

111.    Excentus denies the allegations in paragraph 111 of the Complaint.

112.    Excentus denies the allegations in paragraph 112 of the Complaint.

113.    Excentus admits that Claim 2 of U.S. Patent No. 6,732,081 recites that the "first product" is fuel.   Excentus denies the remaining allegations in paragraph 113 of the Complaint.

114.    Excentus denies the allegations in paragraph 114 of the Complaint.

115.    Excentus denies the allegations in paragraph 115 of the Complaint.

## CLAIM VII: NONINFRINGEMENT OF THE '968 PATENT

116.    Excentus incorporates its responses to paragraphs 1-115 above as if fully set forth herein.

117.    Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 117 of the Complaint and therefore denies same.

118.    Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118 of the Complaint and therefore denies same.

## CLAIM VIII: NONINFRINGEMENT OF THE '967 PATENT

119.    Excentus incorporates its responses to paragraphs 1-118 above as if fully set forth herein.

120.    Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 120 of the Complaint and therefore denies same.

121.    Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 121 of the Complaint and therefore denies same.

## CLAIM IX: NONINFRINGEMENT OF THE '996 PATENT

122.    Excentus incorporates its responses to paragraphs 1-121 above as if fully set forth herein.

123.    Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 123 of the Complaint and therefore denies same.

124.    Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 124 of the Complaint and therefore denies same.

## CLAIM X: NONINFRINGEMENT OF THE '204 PATENT

125.    Excentus incorporates its responses to paragraphs 1-124 above as if fully set forth herein.

126.    Excentus denies the allegations in paragraph 126 of the Complaint.

127.    Excentus denies the allegations in paragraph 127 of the Complaint.

## CLAIM XI: NONINFRINGEMENT OF THE '571 PATENT

128.    Excentus incorporates its responses to paragraphs 1-127 above as if fully set forth herein.

129.    Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 129 of the Complaint and therefore denies same.

130.    Excentus is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 130 of the Complaint and therefore denies same.

## **PRAYER FOR RELIEF**

Excentus denies that the Plaintiffs are entitled to any of the relief requested in the Complaint and asks that all of the Plaintiffs' claims be dismissed with prejudice. To the extent not expressly admitted above, Excentus denies any remaining allegations in the Complaint.

## EXCENTUS'S COUNTERCLAIMS

### PARTIES

1.     Excentus is a Corporation duly organized and existing under the laws of the State of Texas, having a principal of business at 14241 Dallas Parkway, Suite 1200, Dallas, Texas 75254.

2.     Kroger is a corporation duly organized and existing under the laws of the State of Ohio, having a principal place of business at 1014 Vine Street, Cincinnati, Ohio 45202.

3.     Excentus has had no contact with the Kroger Subsidiaries.  Excentus, therefore, will assume for the sake of these counterclaims that the information regarding corporate structure and states of residence relating to each of these Kroger Subsidiaries contained in the Complaint is accurate.

### JURISDICTION

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Excentus's counterclaims arise under the patent laws of the United States, including 35 U.S.C. § 271 et seq.  For the non-patent infringement counterclaims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds $75,000.00.   In the alternative, this Court has supplemental jurisdiction over the non-patent infringement counterclaims pursuant to 28 U.S.C. § 1367 because all the non-patent infringement counterclaims are so related to the patent infringement counterclaims that they form the same case or controversy under Article III of the United States Constitution.

5.     The Court has personal jurisdiction over the Plaintiffs because the Plaintiffs have consented to personal jurisdiction in the State of Ohio by commencing this action in this

90373459.2

judicial district. Additionally, Plaintiffs do business in the State of Ohio and have established minimum contacts with the forum such that the exercise of jurisdiction over the Plaintiffs would not offend traditional notions of fair play and substantial justice.

## VENUE

6. The Plaintiffs have committed acts within this judicial district giving rise to this action and do business in this district, including offering for sale, making sales, and providing service to their respective customers in this district. Acts of infringement and other tortious conduct have occurred in this district. Venue for these counterclaims is proper in this district pursuant to 28 U.S.C. §§ 1391(a), (b), & (c) and 1400(b).

## FACTS

7. Beginning in late 1996 and continuing until the filing of the patents, Randy Nicholson ("Nicholson") conceived of and worked continuously to develop the asserted claimed inventions in Abilene, Texas. Nicholson is a long-time Abilene resident. When Nicholson started his new business known as Auto-Gas Systems, Inc. ("Auto-Gas") in late 1986, he did so in Abilene. Auto-Gas has been based in Abilene since its inception.

8. Long before fuel rewards were used as they are today, Nicholson conceived of the inventions, reduced them to practice and sought patents for them. Nicholson is recognized as a pioneer of many aspects of the retail fuel industry including innovations such as unattended fuel sites for commercial fleets, pay-at-the-pump technology for which he was recognized by USA Today, and providing fuel rewards to customers (which he patented). In order to put his patents to work, Nicholson used Auto-Gas, Centego, L.L.C. ("Centego"), and a marketing agreement with Metrosplash Systems Group ("Metrosplash") (collectively "the

Nicholson Companies"). The Nicholson Companies successfully implemented the patents in their businesses and by way of Auto-Gas licensing the patents to third parties.

9.      In addition to owning the patents, Auto-Gas expended great effort and funds to create and develop highly technical computerized systems, trade secrets, products and programs and confidential information to empower retailers with a way of providing rewards to their customers in the form of gasoline discounts. The Auto-Gas systems, trade secrets, and confidential information involved virtually every aspect of its fuel rewards products and business, including but not limited to:  (a) all of Auto-Gas's business methodologies and technical details of its fuel rewards program, (b) plans and potential opportunities to provide fuel rewards technology and services to customers, (c) information regarding how retailers could develop fuel rewards programs and products, (d) information regarding how to process and accumulate rewards for reduced prices for gasoline, (e) information regarding suppliers for the products and business, (f) information regarding how retailers' promotional items and sales made during different visits to a store could be used and encouraged with fuel credits, (g) information regarding how each customer's rewards information could be accessed, stored, identified and retrieved for gasoline discounts, (h) information regarding how limitations could be placed on such rewards, (i) information regarding how a retailer could allow the rewards to be used at gasoline pumps, (j) Auto-Gas's summaries of its programs and products, (k) Auto-Gas's software, source code, schema, logic and business methods, and (l) other confidential information which gave Auto-Gas an opportunity to obtain an advantage over competitors who did not know or use such information (collectively, the "Auto-Gas Trade Secrets").

10.    Excentus also is a pioneer in the fuel rewards industry.  Excentus was started in 1996 for the purpose of developing fuel marketing technology and services for retailers and commercial fleet operators.    Today, Excentus is the market leader in providing such technology and services, including its own fuel rewards program, to numerous retailers in the United States.  It was this technology and services, among other things, that Excentus offered to Kroger at various points in their commercial relationship.

11.    In September 2008, Excentus acquired Centego which held certain Auto-Gas intellectual property, Nicholson joined the Board of Excentus, and Auto-Gas became a shareholder of Excentus.  Excentus also acquired most of Nicholson's software, systems, trademarks, customers, business operations, the Auto-Gas Trade Secrets, and confidential business or technical information related to the Auto-Gas fuel reward products and services, as well as Auto-Gas's causes of action for prior misappropriation of the Auto-Gas Trade Secrets and common law misappropriation.

12.    In addition to owning the Auto-Gas patents, Excentus previously had expended and continues to expend great effort and funds to create and develop highly technical and market-specific software and computer systems to provide retailers with a way of developing highly effective rewards programs and providing rewards to their customers in the form of gasoline discounts in a cost-effective and timely manner.  The Excentus systems, trade secrets, products and programs, and confidential information involved virtually every aspect of its fuel rewards products and business, including but not limited to:  (a) all of Excentus's business methodologies and technical details of its fuel rewards program, (b) plans and potential opportunities to provide fuel rewards technology and services to customers, retailers, and consumers reaching tens of millions of consumers to create tremendous value, (c) information

regarding how retailers could develop fuel rewards programs and products and how specifically to integrate and enable non-fuel-specific retail systems to support fuel rewards programs, (d) information regarding how to collect and maintain customer account information and manage the accumulation, redemption and settlement of fuel rewards for such customer accounts, (e) information regarding how retailers can develop fuel rewards programs that fit their specific business and marketing resources and plans utilizing Excentus's software to leverage and integrate their existing systems and equipment with other systems (with and without Excentus's systems) to minimize costs and time to market as well as to measure and improve their results, (f) information regarding suppliers for the products and business, (g) information regarding how retailers can operate and promote their fuel rewards programs and provide rewards for item-specific purchases, department-specific purchases or total purchases or any combination thereof and the instant redemption of fuel rewards at the gas pump when customers purchase fuel at participating fuel locations, (h) information regarding how limitations could be placed on such rewards, (i) information regarding how a retailer could allow the rewards to be used at gasoline pumps, (j) Excentus's summaries of its programs and products, (k) information regarding how retailers can network different fuel and non-fuel retailers together to cross-market fuel rewards to increase their desired program benefits, (l) Excentus's software, source code, schema, logic and business methods, and (m) other confidential information which gave Excentus an opportunity to obtain an advantage over competitors who did not know or use such information (collectively, the "Excentus Trade Secrets").

13.     The acquisition by Excentus of Auto-Gas's patents and the Auto-Gas Trade Secrets has aligned the critical patents in the fuel rewards industry with the market leader in

the industry and has combined the Excentus Trade Secrets with the Auto-Gas Trade Secrets (collectively, the "Trade Secrets") regarding how retailers can provide rewards to their customers in the form of gasoline discounts in the most efficient and effective manner.  It also has allowed Excentus to determine that Kroger has engaged in the wrongdoing as alleged in these counterclaims.

### THE AUTO-GAS RELATIONSHIP WITH KROGER

14.     The Auto-Gas relationship with Kroger began in 2000.  Off and on from 2000 through 2008, when Excentus acquired the patents in-suit, Kroger engaged in discussions with Centego, a subsidiary of Auto-Gas, to both license the patents and learn the Auto-Gas Trade Secrets, products and programs, and confidential information of the fuel rewards business during numerous discussions.  During this time, Kroger obtained, on a confidential basis, the Auto-Gas Trade Secrets, products and programs, and confidential information of Auto-Gas at issue in this civil action, including proprietary pricing information and competitive information relating to actual or potential licensees of the technology at issue.

### THE EXCENTUS RELATIONSHIP WITH KROGER

15.     The Excentus relationship with Kroger is similar.  Excentus first provided the Excentus Trade Secrets, products and programs and confidential information to Kroger in 2006 and continued until 2009.  Upon Excentus's acquisition of the patents in suit, Kroger contacted Excentus to continue discussions it was having at the time of the acquisition with Centego to license the patents.  Subsequently, Kroger began making large monthly payments to Excentus while deal terms were being discussed.  During those discussions, Kroger offered to license the patents in suit for a substantial sum.  After Excentus resolved its issues with Safeway, Inc. in 2010, Kroger again contacted Excentus to secure a license.  Only when it

became apparent that Kroger was infringing the patents in suit, wrongfully using the Trade Secrets, products and programs and confidential information, and was not willing to pay Excentus fair value for intentional and knowing use of the patents and trade secrets was the present suit filed.

## INFRINGEMENT OF U.S. PATENT NO. 6,321,984

16.     On November 27, 2001, United States Patent No. 6,321,984 ("the '984 Patent") was duly and legally issued for an invention entitled "Adjustable price fuel dispensing system." A copy of the '984 Patent is attached as Exhibit A.

17.     The '984 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '984 Patent.

18.     The Plaintiffs have engaged and are engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement, and/or induced infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '984 Patent, including but not limited to the Kroger Fuel program directly and/or indirectly infringing at least claims 1-3, 5, 8 and 14-15 of the '984 Patent.

19.     The acts of infringement by the Plaintiffs have caused damages to Excentus, and Excentus is entitled to recover from the Plaintiffs the damages sustained by Excentus as a result of their wrongful acts in an amount subject to proof at trial. The Plaintiffs' infringement of Excentus's exclusive rights under the '984 Patent will continue to damage Excentus's business, causing irreparable harm (including loss of market share), for which there is no adequate remedy at law, unless it is enjoined by this Court. Kroger continues to wrongfully profit from activities that infringe the '984 Patent.

20.     Furthermore, the infringements of the '984 Patent by the Plaintiffs are willful and deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## INFRINGEMENT OF U.S. PATENT NO. 6,332,128

21.     On December 18, 2001, United States Patent No. 6,332,128 ("the '128 Patent") was duly and legally issued for an invention entitled "System and method of providing multiple level discounts on cross-marketed products and discounting a price-per-unit-volume of gasoline."  A copy of the '128 Patent is attached as Exhibit B.

22.     The '128 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '128 Patent.

23.     The Plaintiffs have engaged and are engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement, and/or induced infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '128 Patent, including but not limited to the Kroger Fuel program directly and/or indirectly infringing at least claims 1-5 and 20-25 of the '128 Patent.

24.     The acts of infringement by the Plaintiffs have caused damages to Excentus, and Excentus is entitled to recover from the Plaintiffs the damages sustained by Excentus as a result of its wrongful acts in an amount subject to proof at trial.  The Plaintiffs' infringement of Excentus's exclusive rights under the '128 Patent will continue to damage Excentus's business, causing irreparable harm (including loss of market share), for which there is no adequate remedy at law, unless it is enjoined by this Court. Kroger continues to wrongfully profit from activities that infringe the '128 Patent.

90373459.2

25.     Furthermore, the infringements of the '128 Patent by the Plaintiffs are willful and deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## INFRINGEMENT OF U.S. PATENT NO. 7,383,204

26.     On June 3, 2008, United States Patent No. 7,383,204 ("the '204 Patent") was duly and legally issued for an invention entitled "System and method to provide customer incentive to provide non-fuel products and services."  A copy of the '204 Patent is attached as Exhibit D.

27.     The '204 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '204 Patent.

28.     The Plaintiffs have engaged and are engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement, and/or induced infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '204 Patent, including but not limited to the Kroger Fuel program directly and/or indirectly infringing at least claims 1–3, 5–9, 12, and 13 of the '204 Patent.

29.     The acts of infringement by the Plaintiffs have caused damages to Excentus, and Excentus is entitled to recover from the Plaintiffs the damages sustained by Excentus as a result of its wrongful acts in an amount subject to proof at trial.  The Plaintiffs' infringement of Excentus's exclusive rights under the '204 Patent will continue to damage Excentus's business, causing irreparable harm (including loss of market share), for which there is no adequate remedy at law, unless it is enjoined by this Court.  Kroger continues to wrongfully profit from activities that infringe the '204 Patent.

30. Furthermore, the infringements of the '204 Patent by the Plaintiffs are willful and deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## INFRINGEMENT OF U.S. PATENT NO. 7,742,942

31. On June 22, 2010, United States Patent No. 7,742,942 ("the '942 Patent") was duly and legally issued for an invention entitled "System and method for discounting fuel." A copy of the '942 Patent is attached as Exhibit E.

32. The '942 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '942 Patent.

33. The Plaintiffs have engaged and are engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement, and/or induced infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '942 Patent, including but not limited to the Kroger Fuel program directly and/or indirectly infringing at least claims 1, 4, 9, 10, and 15 of the '942 Patent.

34. The acts of infringement by the Plaintiffs have caused damages to Excentus, and Excentus is entitled to recover from the Plaintiffs the damages sustained by Excentus as a result of its wrongful acts in an amount subject to proof at trial. The Plaintiffs' infringement of Excentus's exclusive rights under the '942 Patent will continue to damage Excentus's business, causing irreparable harm (including loss of market share), for which there is no adequate remedy at law, unless it is enjoined by this Court. Kroger continues to wrongfully profit from activities that infringe the '942 Patent.

35.     Furthermore, the infringements of the '942 Patent by the Plaintiffs are willful and deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## TRADE SECRET MISAPPROPRIATION

36.     Kroger has knowingly and intentionally misappropriated the Trade Secrets disclosed to it in confidence by Excentus and Auto-Gas.  Excentus was assigned all of the Auto-Gas Trade Secrets and causes of action for misappropriation of such Auto-Gas Trade Secrets, so Excentus now owns all the Trade Secrets at issue in this claim.

37.     Such Trade Secrets have independent economic value.  They required substantial time, effort, and funds to develop, revise, and complete into the Trade Secrets that Kroger misappropriated.  Competitors would benefit from knowing the Trade Secrets information, and Excentus and Auto-Gas exercised reasonable diligence in maintaining the secrecy and confidentiality of the Trade Secrets.  Kroger has unlawfully used these Trade Secrets, including filing and obtaining an issued patent using Excentus's trade secret information.

38.     The use or disclosure of the Trade Secrets has resulted in damage to Excentus and a benefit including improper profits to Kroger.  Excentus sues for its actual and exemplary damages as a result of this misappropriation of the Trade Secrets by Kroger.  Because Kroger's conduct constitutes a violation of Texas Penal Code §31.05 (theft of trade secrets), there is no limit on such exemplary damages.  In addition, Excentus is entitled to injunctive relief preventing Kroger from using the Trade Secrets.

## COMMON LAW MISAPPROPRIATION

39.     Both Excentus and Auto-Gas created successful fuel rewards products and programs through extensive time, labor, skill, and money.  Excentus acquired the Auto-Gas fuel rewards products and programs, technology, and confidential information, and Excentus now owns such technology, confidential information, and the cause of action for prior common law misappropriation.

40.     Kroger has used Excentus's products and programs (including those acquired from Auto-Gas) in competition with Excentus and Auto-Gas, thereby gaining a special advantage or free ride because Kroger has not borne any of the expense incurred by Excentus and Auto-Gas.  This conduct by Kroger constitutes common law misappropriation, has caused damage to Excentus, and has resulted in improper profits to Kroger.  These undeserved profits further caused Excentus an exponential loss of revenue associated with an agreement entered into between Kroger and Shell Oil Company.  The Kroger Agreement with Shell has caused, and currently is causing, extensive damage to Excentus.

41.     Excentus sues for its actual and exemplary damages as a result of this common law misappropriation by Kroger.   In addition, Excentus is entitled to injunctive relief preventing Kroger from using the products and programs obtained from Excentus and Auto-Gas.

## IMPOSITION OF A CONSTRUCTIVE TRUST

42.     The above-described patent infringement, misappropriation of trade secrets, common law misappropriation, and other wrongful conduct by Kroger has proximately caused damages to Excentus.  At the same time, such wrongful conduct has directly and unjustly benefited Kroger insofar as the wrongful conduct described above has led to the creation,

existence, viability, and success of the competing Kroger program, which was not independently created. It came into existence only after Kroger learned everything needed from the Trade Secrets, the misappropriated products and programs and confidential information, and the patents. Without the wrongfully acquired information, the competing Kroger program simply could not have been created in the time frame and manner in which it was implemented. The competing Kroger program can be traced to this wrongfully acquired information.

43. Excentus is therefore entitled to have the Court impose a constructive trust on the competing Kroger program and all monies, benefit, goodwill, and assets related to it. The competing Kroger program was built on the Trade Secrets, products and programs, patents, confidential information, and know-how wrongfully misappropriated from Excentus and Auto-Gas. Kroger would be unjustly enriched if allowed to retain its competing program and the benefits derived from it. Excentus is entitled to all the benefits accruing to Kroger from such misappropriation.

## UNFAIR COMPETITION

44. Kroger's actions described herein constitute business conduct that is contrary to honest practice in industrial or commercial matters.

45. Kroger gained an unfair advantage in the market by capitalizing on Excentus's efforts and success in its fuel reward systems by infringing its patents and gaining access to Excentus's Trade Secrets and other proprietary and confidential information and then using these for Kroger's benefit and against Excentus in the marketplace, which are acts that constitute unfair competition under Texas law.

46.     Kroger's acts were willful and in bad faith and Kroger has continued to infringe Excentus's patents and use Excentus' Trade Secrets and confidential and proprietary information against Excentus and will continue to do so, gaining an unfair advantage in the market by these acts of unfair competition.  Excentus is entitled to injunctive relief, actual damages, and punitive damages as a result of these acts of unfair competition.

**PRAYER**

WHEREFORE, Excentus respectfully prays that upon final trial a judgment be entered and that the following relief be granted:

(1)     For judgment that the '984 Patent is valid and has been and will continue to be infringed by Plaintiffs;

(2)     For judgment that the '128 Patent is valid and has been and will continue to be infringed by Plaintiffs;

(3)     For judgment that the '204 Patent is valid and has been and will continue to be infringed by Plaintiffs;

(4)     For judgment that the '942 Patent is valid and has been and will continue to be infringed by Plaintiffs;

(5)     For an accounting of all damages sustained by Excentus as a result of the acts of infringement by Plaintiffs;

(6)     For preliminary and permanent injunctions enjoining the aforesaid acts of infringement by Plaintiffs, their officers, agents, servants, employees, subsidiaries and attorneys, and those persons acting in concert with them, including related individuals and entities, customers, representatives, dealers, and distributors;

(7)     For actual damages together with prejudgment interest against Plaintiffs;

(8)     For enhanced damages pursuant to 35 U.S.C. § 284 against Plaintiffs;

(9)     For an award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law against Plaintiffs;

(10)    For preliminary and permanent injunctions enjoining Plaintiffs, its officers, agents, servants, employees, subsidiaries and attorneys, and those persons acting in cooperation with Plaintiffs, including related individuals and entities, customers, representatives, dealers, and distributors, from using the Trade Secrets and/or products and programs and confidential information in any way and from continuing to operate the infringing Kroger program;

(11)    For exemplary or punitive damages against Plaintiffs;

(12)    For all costs of suit and prejudgment and post-judgment interest as allowed by law;

(13)    For a constructive trust to be imposed as set forth above on the competing Kroger program and all benefits flowing from it; and

(14)    For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Excentus demands a trial by jury on its counterclaims.

Dated: June 3, 2011

Respectfully submitted,

*/s/* Brett C. Govett
Brett C. Govett (Texas Bar No.  08235900)
Email: bgovett@fulbright.com
Karl G. Dial (Texas Bar No. 05800400)
Email: kdial@fulbright.com
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX  75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200


/s/ Carl J. Stich, Jr.
Carl J. Stich Jr. (Ohio # 0013300)
WHITE, GETGEY & MEYER CO. LPA
1700 Fourth and Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Phone:  (513) 241-3685
Fax:  (513) 241-2399
*Trial Attorney for Defendant Excentus Corp.*


### CERTIFICATE OF SERVICE

I hereby certify that, pursuant to S. D. Ohio Civ. R. 5.2(b), a true and correct copy of the foregoing pleading was served this 3rd day of June, 2011 via the Court's ECF system upon all counsel of record that are registered ECF users.


/s/ Brett C. Govett
Brett C. Govett

90373459.2