IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| THE KROGER CO. et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>EXCENTUS CORPORATION, a Texas Corporation,<br><br>    Defendant. | Civil Action No. 1:10-CV-161-SSB<br><br>Judge Sandra S. Beckwith |

**EXCENTUS CORPORATION'S OPENING CLAIM CONSTRUCTION BRIEF**

Defendant and Counter-Plaintiff Excentus Corporation ("Excentus") files its Opening Claim Construction Brief pursuant to the Local Patent Rules for the U.S. District Court for the Southern District of Ohio ("Local Patent Rules"). *See* S. D. Ohio Pat. R. 105.4(a).

**I.  INTRODUCTION**

Excentus maintains that the vast majority of claim terms in the asserted patent claims do not require construction and should be given their plain and ordinary meaning. In order to comply with the Local Patent Rules, however, Excentus has attempted to identify the terms that may be the most significant to the resolution of this case and proposed constructions for these terms that are consistent with their plain and ordinary meanings. Conversely, the Plaintiffs are requesting the construction of entire claim limitations in an apparent effort to free themselves from any limitations on the number of terms that the Court will construe. With respect to the *forty-one* "terms and phrases" that the Plaintiffs claim are in dispute, the dispute is a result of the Plaintiffs rejecting any attempt to give the claim terms their plain and ordinary meaning.

II.     SUMMARY OF THE TECHNOLOGY

The asserted patents relate generally to systems and methods for discounting fuel.  U.S. Patent No. 6,321,984 ("the '984 Patent") claims a system for dispensing fuel at a discounted unit price that is associated with a user's achievement of a purchasing criteria.  U.S. Patent No. 6,332,128 ("the '128 Patent") claims a method and system for providing discounts on a consumable good in response to the purchase of a cross-marketed product.  U.S. Patent No. 7,383,204 ("the '204 Patent") claims a method and system for incentivizing customers to purchase non-fuel products or services by providing rewards that entitle them to free fuel.  Lastly, U.S. Patent No. 7,742,942 ("the '942 Patent") claims a method and system for discounting fuel and increasing the use of third-party financial cards.

III.    CLAIM CONSTRUCTION BRIEFING AND EXTRINSIC EVIDENCE UNDER LOCAL PATENT RULE 105.4

Pursuant to Local Patent Rule 105.4, the parties are to "serve and file an Opening Claim Construction Brief concerning the proposed construction of each claim term or phrase that the parties have identified as being in dispute in each patent."  S. D. Ohio Pat. R. 105.4(a). Additionally, the parties are to describe the function and identify the structure(s), act(s), or material(s) that correspond to any elements asserted to be means-plus-function elements under 35 U.S.C. § 112, paragraph 6.  *Id.*  The parties are also to identify the "terms or phrases the construction of which will be most significant to the resolution of the case up to a maximum of ten."  S. D. Ohio Pat. R. 105.2(c)-(d).

A.      The Nine Most Significant Terms or Phrases Identified by the Parties

The parties have agreed that (1) "a record associated with purchases made by the user, the record including the users achievement of a purchasing criteria" (used in all asserted claims of the '984 Patent) is one of the most significant terms.  However, the parties do not agree with

90519458.2

2

respect to the remaining terms or phrases, so each side has identified four additional phrases as being the most significant, for a total of nine terms or phrases.

The Plaintiffs identify the following four additional terms or phrases as the most significant:.

> (2) awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product (Claims 1-4 of the '128 Patent);
>
> (3) dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel (all asserted claims of the '204 Patent);
>
> (4) increasing customer use of third-party financial cards issued by a plurality of third-party issuers (preamble of Claims 1 – 8 of the '942 Patent); and
>
> (5) increasing customer use of a third-party financial card issued by a third-party issuer, wherein the third-party financial card is selected from a group consisting of different issuers of credit cards (preamble of Claims 9 – 16 of the '942 Patent).

Excentus identifies the following four additional terms or phrases as the most significant, many of which are applicable to multiple, if not all, claims of the asserted patent at issue:

> (6) discount (all asserted claims of the '128 Patent);
>
> (7) dispensing an amount of free fuel (all asserted claims of the '204 Patent);
>
> (8) means for providing the customer with a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel products or services in the first visit, and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit (Claims 7, 8, 9, 12, and 13 of the '204 Patent); and
>
> (9) associating the identified third-party issuer of the financial card with the stored PPU discount for the fuel (all asserted claims of the '942 Patent).

It is Excentus' position that claim construction is unnecessary for the vast majority of the "terms and phrases" that the Plaintiffs are asking the Court to construe.  The terms and phrases identified by the Plaintiffs are entitled to their plain and ordinary meaning with no construction needed.  Pursuant to *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010), Excentus respectfully contends the Court should reject Plaintiffs' numerous requested constructions and construe only the terms that Excentus has identified and properly evaluate the means-plus-function terms in the asserted claims.  *See* Ex. A, Means-Plus-Function Chart.  Further, Excentus respectfully contends that the Plaintiffs have, in many instances, identified entire claim limitations for construction in an effort to negate the reasonable claim construction limits imposed by the Local Patent Rules.

## IV. CLAIM CONSTRUCTION PRINCIPLES

<u>General</u>

Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).  Although it is the district court's duty to resolve claim construction disputes, the court is not required to construe all of the claim terms in the asserted patent claims.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  Claim terms are usually given their plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").  Courts may reject attempts by accused infringers to narrow the appropriate claim scope and instead construe claim terms as having their plain and ordinary meaning.  *Finjan, Inc.*, 626 F.3d at 1206-07.

90519458.2

If construction of particular claim terms is necessary, the "claims themselves provide substantial guidance" as to their meaning. *Phillips*, 415 F.3d at 1314. Although the claims must be read in view of the specification, limitations from the specification must not be imported into the claims. *Id.* at 1315, 1323. Similarly, claims are not confined to embodiments disclosed in the specification even "if a patent describes only a single embodiment." *Id.* at 1323.

In cases where a claim term may have a particular meaning in a field of art, the court will generally look to intrinsic evidence sources (i.e., claim language, specification, prosecution history) to construe claim terms in dispute. *Phillips*, 415 F.3d at 1314-17. It is also permissible for courts to consider extrinsic evidence sources (e.g., dictionaries, treatises, inventor or expert testimony, etc.) during claim construction, though extrinsic evidence is generally viewed "as less reliable than the patent and its prosecution history in determining how to read claim terms . . ." *Id.* at 1317-19. Further, claim terms must be construed so as to avoid improperly importing limitations from the specification into the claim. *Id.* at 1323.

Preamble

Claims are not generally limited by what is included in the claim preamble. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). Although a claim preamble may be limiting in certain instances (i.e., when necessary to provide "life, meaning, and vitality" to the claim), a preamble is not limiting when the body of the claim is structurally complete and the preamble can be considered as duplicative of limitations in the body of the claim. *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358-58 (Fed. Cir. 2010).

Means-Plus-Function

Means-plus-function limitations are "construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112 (2010).

90519458.2

5

Means-plus-function limitations satisfy the definiteness requirement if the written description discloses structure that performs the recited function. *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1376 (Fed. Cir. 2010). Whether structure has been sufficiently disclosed is "considered from the perspective of a person skilled in the art." *Id.*

## V. CLAIM CONSTRUCTION ARGUMENT

In order to facilitate the Court's comparison of the parties claim construction contentions, Excentus will discuss the terms and phrases in the order in which they were submitted in the Joint Claim Construction and Prehearing Statement (Docket Entry No. 45), though the numbering of these terms does not indicate any priority in the significance of the nine terms/phrases/limitations identified by the parties.

### A. "a record associated with purchases made by the user, the record including the users achievement of a purchasing criteria"

| Excentus' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| a record associated with fuel and non-fuel purchases made by the user, the record including the users achievement of a purchasing criteria | a record associated with fuel or non-fuel purchases made by the user, the record including a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria |

This phrase is applicable to all of the asserted claims in the '984 Patent and both parties agree that it is one of the most significant claim terms or phrases to be construed. Excentus' proposed construction is consistent with the plain and ordinary meaning of the terms at issue in view of the specification, while the Plaintiffs' proposed construction seeks to narrow the scope of the claimed invention by more than doubling the number of words that a jury will eventually have to consider.

Based on the parties' proposed constructions, one disputed issue is whether the record at issue is associated with "fuel or non-fuel" purchases (Plaintiffs' construction) or associated with

90519458.2

6

"fuel and non-fuel" purchases (Excentus' construction). Based on Figure 9 and the related description in the specification (col. 9, lines 23-67), it is clear that the record at issue is associated with fuel purchases (e.g., exemplary field 312 indicates when a fuel discount has been used) **and** non-fuel purchases (e.g., exemplary field 304 indicates the dollar value of purchases of items such as "baby formula" or "cereal"), not one or the other as advocated by the Plaintiffs. *See also* '984 Patent, col. 11, lines 39-42 ("In this scenario, a customer may purchase a certain volume of gas or other items such as candy bars and coffee which triggers a discount in the price of fuel."). There is nothing to suggest that the record is associated with only fuel purchases or only non-fuel purchases, when in fact, the record must be associated with both fuel and non-fuel purchases in order for the claimed system to function.

After identical claim language from the parties' constructions is removed, the only remaining difference is that the Plaintiffs propose that "the users achievement of purchasing criteria" is construed as "a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria."[1]  In this instance, although the plain and ordinary meaning of the phrase is clear, the Plaintiffs are attempting to incorporate elements from other parts of the claim into its construction (e.g., "discounted unit price" is referenced in the second and fifth claim limitations, not this fourth claim limitation). The plain and ordinary meaning of "users achievement of purchasing criteria" is sufficiently clear for a lay jury to understand and the Plaintiffs seek to improperly import limitations from the specification (and indeed, from the claim itself) into the claims at issue.

---

[1] This is also the first of many examples of the Plaintiffs seeking to have this Court construe multiple claim terms by identifying entire limitations in dispute instead of actual claim terms (e.g., "purchases") or phrases (e.g., "users achievement of purchasing criteria"). In the spirit of cooperation, Excentus agreed to designate this nineteen word "phrase" as a "disputed term," but was unwilling to do so with the forty other limitations that the Plaintiffs want construed in their entirety.

90519458.2

7

**Plaintiffs' Limitations to be Construed**

The next four asserted claim terms/phrases (i.e., Sections V.B through V.E) are those identified solely by the Plaintiffs as the "most significant to the resolution of the case" pursuant to Local Patent Rule 105.2(d)(iii). Because the Plaintiffs selected entire claim limitations instead of distinct terms or phrases, Excentus has isolated (and bolded in the charts below) the actual differences between the claim language and the constructions proposed by the Plaintiffs. In this way, the actual claim terms that the Plaintiffs want construed, though they exceed the allotted number, are identified. For example, when the identical language from the claim limitation is removed from the Plaintiffs' proposed construction (*see* Section V.B), it is clear that there are three distinct terms in this limitation that the Plaintiffs want construed.

> B. **"awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product"**

| Plaintiffs' Proposed Construction | Excentus' Proposed Construction |
|---|---|
| awarding a second **product-specific reduction in a specified monetary amount** on the price per unit of the consumable good to the customer **in exchange for** a purchase by the customer of a second **predetermined product being marketed**<br><br>*3 TERMS* | No Construction Required – Plain and Ordinary Meaning (except "discount" – *see* Section F *infra*)<br><br>If construed: awarding a second representation of reduction on the PPU of the consumable good to the customer in response to a purchase by the customer of a first cross-marketed product |

This limitation is present in claims 1-4 of the '128 Patent. The following are the distinct terms/phrases from the limitation that the Plaintiffs want construed:

| Claim Term/Phrase | Plaintiffs' Proposed Construction |
|---|---|
| discount | product-specific reduction in a specified monetary amount |
| in response to | in exchange for |
| cross-marketed product | predetermined product being marketed |

90519458.2

8

For Excentus' proposed construction of "discount" in the '128 Patent, *see* the discussion in Section F, and note that Plaintiffs argue for a different construction for "discount" than here (i.e., "product-specific reduction in a specified monetary amount" vs. "reduction in a specified monetary amount").

"In response to" should be given its plain and ordinary meaning. Excentus is aware of nothing in the intrinsic evidence that would suggest that "in response to" actually means "in exchange for," which indicates that the *purpose* of the purchase of the cross-marketed product was to obtain the discount, when there is nothing to suggest that is the case.

"Cross-marketed product" should be given its plain and ordinary meaning. Plaintiffs propose that "cross-marketed product" means "predetermined product being marketed." In addition to the fact that Plaintiffs' construction makes the claim term less clear, Excentus is aware of no intrinsic evidence to support the assertion that a cross-marketed product must be "predetermined." In fact, the only use of the term "predetermined" in the '128 Patent is in relation to the criteria for allocation of discounts in two unasserted patent claims. *See, e.g.*, '128 Patent, Claims 11 and 15.

**C.** **"dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel"**

| Plaintiffs' Proposed Construction | Excentus' Proposed Construction |
|---|---|
| dispensing **at no charge** to the customer, **rather than at a reduced unit price,** a total amount of fuel **equal to the sum of** the first and second amounts **previously awarded to the customer**<br><br>*3 TERMS* | No Construction Required – Plain and Ordinary Meaning (except "dispensing an amount of free fuel" – *see* Section G *infra*) |

This limitation is present in all of the asserted claims of the '204 Patent. The following are the distinct terms/phrases from the limitation that the Plaintiffs want construed:

90519458.2

9

| Claim Term/Phrase | Plaintiffs' Proposed Construction |
|---|---|
| free | at no charge, rather than at a reduced rate |
| total | equal to the sum of |
| (additional element added by Plaintiffs) | previously awarded to the customer |

For Excentus' proposed construction of "free" in the '204 Patent, *see* the discussion in Section G (i.e., "dispensing amount of free fuel").

"Total" should be given its plain and ordinary meaning. "Total" is a term that any layperson can understand and giving "total" a construction of "equal to the sum of" does nothing to clarify the scope of this limitation, and instead, needlessly complicates the scope of the claim language.

With respect to Plaintiffs' attempt to incorporate "previously awarded to the customer" into this limitation, there is no "award" element in the claims, so it is unclear how or why free fuel should be characterized as "previously awarded."

### D. "increasing customer use of third-party financial cards issued by a plurality of third-party issuers"

| Plaintiffs' Proposed Construction | Excentus' Proposed Construction |
|---|---|
| increasing use of **multiple, different payment cards** issued **to customers by multiple, different issuers that are unrelated to the fuel merchant**<br><br>*3 TERMS* | No Construction Required – Plain and Ordinary Meaning<br><br>If construed: increasing customer use of third-party financial cards issued by more than one third-party issuer |

This language is included in the *preamble* of Claims 1 through 8 and should not be given any effect, nor does it require any construction as a result. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002).

Should the Court determine that the preamble of Claims 1 through 8 is limiting, the following are the distinct terms/phrases from the limitation that the Plaintiffs want construed:

| Claim Term/Phrase | Plaintiffs' Proposed Construction |
|---|---|
| third-party financial cards | multiple, different payment cards |
| (additional element added by Plaintiffs) | to customers |
| a plurality of third-party issuers | multiple, different issuers that are unrelated to the fuel merchant |

Plaintiffs seek to narrowly construe "third-party financial cards" to mean "multiple, different payment cards," which is contrary to the plain and ordinary meaning of the term. "Financial" does not mean "payment," and the Plaintiffs' attempt to improperly limit the claim scope in this way should be denied. In the same way, "third-party" does not mean "multiple, different." "Third-party" is a claim term that is easily understood by a layperson and should be given its plain and ordinary meaning, which does not include defining "third-party" to mean "multiple and different" as the Plaintiffs propose.

The claim language in this limitation states who issues the financial cards (i.e., plurality of third-party issuers), but does not state who the cards are issued to, which itself establishes that this element is beyond the scope of the claim. *See* '942 Patent, Claim 1; *see also Phillips*, 415 F.3d at 1314 (claims themselves offer substantial guidance as to their meaning). The Plaintiffs seek to improperly import the limitation "to customers" into the claims when there is no suggestion of a limitation relating to whom the financial cards are issued. *See id.* at 1315, 1323.

90519458.2

11

Finally, the Plaintiffs seek to construe "a plurality of third-party issuers" to mean "multiple different issuers that are unrelated to the fuel merchant." Read in conjunction with Plaintiffs' construction of "third-party" above (i.e., "third-party" means "multiple, different"), it is clear that Plaintiffs attempt to construe "plurality of issuers" to mean "issuers that are unrelated to the fuel merchant." Again, the plain and ordinary meaning of "plurality of issuers" is appropriate as a layperson can easily understand the scope of this term. If the Court determines that construction is needed, Defendant proposes that "a plurality of third party issuers" means "more than one third-party issuer." The word "plurality" modifies issuers to indicate a quantity, not a quality (i.e., "unrelated to the fuel merchant"), as the Plaintiffs would have this Court read into the claims.

### E. "increasing customer use of a third-party financial card issued by a third-party issuer, wherein the third-party financial card is selected from a group consisting of different issuers of credit cards"

| Plaintiffs' Proposed Construction | Excentus' Proposed Construction |
|---|---|
| increasing use of **multiple, different payment** cards issued **to customers** by **multiple, different** issuers **that are unrelated to the fuel merchant** | No Construction Required – Plain and Ordinary Meaning<br><br>If construed: increasing customer use of third-party financial cards issued by more than one third-party issuer |

This language is included in the *preamble* of Claims 9 through 16 and should not be given any effect, nor is any construction required as a result. *See Allen Eng'g Corp.*, 299 F.3d at 1346.

Should the Court determine that the preamble of Claims 9 through 16 is limiting, because the Plaintiffs propose the identical construction for this limitation as they did in Section

V.D above, Excentus relies on the same arguments and construction principles identified above with respect to Section V.D.

### Excentus' Terms/Phrases to be Construed

**F.** **"discount"**

| Excentus' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| representation of reduction | reduction in a specified monetary amount |

This claim term is present in all of the asserted claims of the '128 Patent. The intrinsic evidence establishes that a "discount" is a "representation of reduction." Discount is used in the claim language in the context of, for example, awarding a discount on the price per unit of a consumable good, but the discount is a reduction that can be represented in a number of ways. *See* '128 Patent, Claim 1. In Figure 2, it is clear that the discount can be represented in "CENTS PER FUEL UNIT VOLUME" (Field 5) or as an "AMOUNT TO BE DEDUCTED FROM TOTAL SALE" (Field 7). *See, e.g.*, '128 Patent, Fig. 2. Further, the specification states that a discount could be a reduction of "$0.02 per gallon" (col. 1, lines 66-67) or a "total discount instead of a PPU discount" (col. 5, line 55 – col. 6, line 2).

When read in light of the asserted claims, it is clear that "awarding a first [representation of reduction] on the PPU of the consumable good" establishes the correct construction for "discount." Conversely, the Plaintiffs' proposed construction is contrary to the intrinsic evidence. When read in light of the claims, "awarding a first [reduction in a specific monetary amount] on the PPU of the consumable good" does not allow for other discounts (e.g., percentage discounts on the PPU of the consumable good) that are not disclaimed in the intrinsic evidence for the '128 Patent.

G. "dispensing an amount of free fuel"

| Excentus' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| providing some fuel at no charge | dispensing **at no charge to the customer, rather than at a reduced unit price**, an amount of fuel |

This claim phrase is present in all of the asserted claims of the '204 Patent. An examination of the intrinsic evidence establishes that "dispensing an amount of free fuel" means "providing some fuel at no charge." The '204 Patent discloses dispensing free fuel in two manners: (1) by adjusting the gas price per gallon (i.e., 10¢ discount per gallon); or (2) by awarding a dollar amount of gas (i.e., $1 of free gas). *See, e.g.*, '204 Patent, Fig. 10; col. 10, line 63 – col. 11, line 1; col. 6, lines 40-64; col. 8, lines 38-50. The claimed invention provides the customer "some fuel at no charge" under both embodiments. For example, if the customer receives 10 gallons of fuel at a 10¢ discount per gallon, then the customer receives $1 of "fuel at no charge." The customer receives the same amount of "fuel at no charge" from a coupon worth $1 of free gas. The specification of the '204 Patent supports Excentus' construction. *See, e.g.*, '204 Patent, Fig. 10; col. 10, line 63 – col. 11, line 1; col. 6, lines 40-64; col. 8, lines 38-50.

Plaintiffs' construction is a repetition of the claim language except for the claim term "free." Plaintiff construes "free" to mean "at no charge to the customer, rather than at a reduced price." To support its construction, Plaintiff cites to a single excerpt of the '204 Patent focusing on a single embodiment of the claimed invention. *See* '204 Patent, column 6, lines 51-64. Nothing in the '204 Patent or its file history supports a disclaimer of the embodiment covering a price per gallon discount. *See* '204 Patent, Fig. 10; col. 10, line 63 – col. 11, line 1; col. 8, lines 38-50. The Court must reject Plaintiff's unsupported contention that "dispensing an amount of

free fuel" must be limited to a single embodiment of the '204 Patent. *See Phillips*, 415 F.3d at 1323.

      H.    **"means for providing the customer with a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel products or services in the first visit, and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit"**

This claim limitation is subject to 35 U.S.C. § 112, paragraph six and is present in claims 7, 8, 9, 12, and 13 of the '204 Patent. Despite this claim limitation satisfying the statutory requirements for patent eligibility, Plaintiffs argue that this means-plus-function claim element is indefinite with respect to structure and algorithm. The claimed function is "providing the customer with a first reward entitling the customer to a first amount of fuel at no charge in exchange for purchasing the non-fuel products or services in the first visit, and for providing the customer with a second reward entitling the customer to a second amount of fuel at no charge in exchange for purchasing the non-fuel products or services in the second visit." The structure for performing the claimed function is a computing center, computer, server or equivalent thereof.

Support in the specification for the structure includes Figure 10 (illustrating the algorithm), Column 1: line 64 through Column 2: line 4, Column 4: line 57 through Column 5: line 12, and Column 10: lines 36-53 (e.g., a server performs the claimed function). No additional construction is necessary and any claim terms or phrases construed are entitled to their plain and ordinary meaning. *See Finjan, Inc.*, 626 F.3d at 1206-07.

I. **"associating the identified third-party issuer of the financial card with the stored PPU discount for the fuel"**

| Excentus' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| associating the proper per unit discount with each issuer | associating the identity of the third-party financial card issuer with the stored price per unit **reduction in a specified monetary amount to which the customer is entitled for using the third-party issuer's financial card**, **where the third-party issuer is unrelated to the fuel merchant** |

This claim phrase is present in all the asserted claims of the '942 Patent. A review of the intrinsic evidence establishes that "associating the identified third-party issuer of the financial card with the stored PPU discount for the fuel" means "associating the proper per unit discount with each issuer." The '942 Patent discloses that the claimed invention associates a per unit discount with the issuer of the financial card. *See, e.g.*, '942 Patent, col. 4, lines 41-46 ("The BIN range from the card number is utilized to identify the card issuer, and at step 14 the dispenser controller retrieves an associated PPU discount from a relationship database."). Further, Excentus' proposal represents the plain and ordinary meaning of this claim term.

The Plaintiffs' proposal focuses on two issues already discussed. First, the Plaintiffs argue that "discount" means "reduction in a specified monetary amount." This construction is not supported by the '942 Patent and does not represent the plain and ordinary meaning of "discount." In fact, the '942 Patent discloses percentage discounts on the price of fuel. *See* '942 Patent, col. 4, lines 1-13. Under the Plaintiffs' construction, these discounts would not be covered by the claims. The Plaintiffs fail to identify any disclaimer of this embodiment. The Court should reject the Plaintiffs' attempt to read this embodiment out of the claims.

The Plaintiffs also import the language "to which the customer is entitled for using the third-party issuer's financial card," and "where the third party issuer is unrelated to the fuel

90519458.2

16

merchant" into its construction. This is an attempt to further narrow the constructions of "discount" and "third-party issuer of the financial card." However, there is no suggestion in the claim language or the specification for the importation of these limitations. This tortured construction highlights the Plaintiffs' desire to improperly narrow the scope of the asserted claims by introducing language that is inconsistent with the claim's plain and ordinary meaning.

## VI. ADDITIONAL CONSTRUCTIONS REQUESTED BY THE PLAINTIFFS

Attached at Exhibit A is a chart setting forth the remaining *eleven* means-plus-function claims in dispute and the parties' respective positions on those claims. Attached at Exhibit B is chart setting forth the parties' respective positions on the remaining *twenty-one* terms/phrases/limitations that the Plaintiffs insist require construction beyond their plain and ordinary meaning.

## VII. CONCLUSION

It is the Plaintiffs' position that there are forty-one terms, phrases, and indeed, entire limitations, that require construction in this case. Excentus respectfully contends that all but a select few terms and phrases should be given their ordinary meaning. In accordance with the Local Patent Rules, Excentus has briefed the nine most significant terms/phrases in this case (one agreed to by the parties and four independent terms/phrases/limitations identified by each party). The remaining terms/phrases/limitations identified by the Plaintiffs require no construction and should be given their plain and ordinary meaning.

Dated: September 20, 2011                        Respectfully submitted,

*/s/* Brett C. Govett
Brett C. Govett (Texas Bar No.  08235900)
Email: bgovett@fulbright.com
Karl G. Dial (Texas Bar No. 05800400)
Email: kdial@fulbright.com
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX  75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200


/s/ Carl J. Stich, Jr.
Carl J. Stich Jr. (Ohio # 0013300)
WHITE, GETGEY & MEYER CO. LPA
1700 Fourth and Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Phone:  (513) 241-3685
Fax:  (513) 241-2399
*Trial Attorney for Defendant Excentus Corp.*


## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to S. D. Ohio Civ. R. 5.2(b), a true and correct copy of the foregoing pleading was served this 20th day of September, 2011 via the Court's ECF system upon all counsel of record that are registered ECF users.


/s/ Brett C. Govett
Brett C. Govett

90519458.2