|  |  |  |
|---|---|---|
| IN THE UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF OHIO<br>WESTERN DIVISION AT CINCINNATI | | |
| THE KROGER CO., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>EXCENTUS CORPORATION,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | JUDGE SANDRA S. BECKWITH<br><br><br>CIVIL ACTION NO. 1:10-cv-00161-SSB<br><br><br>**PLAINTIFFS' RESPONSIVE CLAIM<br>CONSTRUCTION BRIEF** |
| | _____ | |

## I.    INTRODUCTION

Excentus argues that "the vast majority of the claim terms in the asserted patents do not require construction and should be given their plain and ordinary meaning." [Excentus's Opening Brief, Doc.# 50, p. 1].   While Kroger agrees that the Court does not need to construe every word of a claim, the Court must resolve genuine disputes between the parties regarding the scope of the claims.  *O2 Micro International Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008); *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009)("[T]he court must see to it that disputes concerning the scope of the patent claims are fully resolved."); *see also Liebel-Flarsheim Co. v. Medrad Inc.*, Case No. 1:04-cv-607, 2006 U.S. Dist. LEXIS 17031, *17 (Beckwith, J.) ("[A] patentee cannot avoid defining its own claim terms by asserting that its claims have a plain meaning.").

The essential function of claim construction is to determine what is the plain and ordinary meaning of claim terms when the parties disagree. *Maytag Corp. v. Electrolux Home Products, Inc.*, 411 F. Supp. 2d 1008, 1037-38 (N.D. Iowa 2006)(recognizing that the scope of the plain and ordinary meaning of the claim language is usually where the parties' dispute lies).   The plain and ordinary meaning of claim language is not the meaning to a layperson who is unfamiliar with the patent; it is the meaning that the language would have to a person of ordinary skill in the art in question who is deemed to have read the claim in the context of the entire patent. *Philips v. AWH Corp.*, 415 F.3d 1303, 1313, 1321 (Fed. Cir. 2005) (*en banc*) ("Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent.");  *Medrad, Inc. v. MRI Devices, Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005); *Nystrom v. TREX Co.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005); *Maytag*, 411 F. Supp. 2d at 1037-38.  Claim construction, therefore, is the process of determining the plain and ordinary meaning. As the court recognized in *Maytag*, merely asserting that the plain and ordinary meaning applies does not eliminate the need for claim construction:

> The court does not agree with Maytag's assertion that terms to be given their "ordinary meanings" do not require any construction.  As the court stated in its September 6, 2005, Order, while terms not expressly defined in a patent are to be given their "ordinary meaning," it is their "ordinary meaning … *as understood by a person of skill in the art*."  See *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005 (en banc) (emphasis added).  It has been this court's experience that parties in patent cases rarely agree on the "ordinary meaning [of patent terms] as understood by a person of skill in the art," so that asserting that such a meaning should apply, without further construction, merely begs the question of what that meaning is.

*Maytag*, 411 F. Supp. 2d  at 1037-38; s*ee also*, *O2*, 521 F.3d at 1361 ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.").

Contrary to Excentus' suggestion, courts do not perform claim construction only when a claim includes a special term of art that is not well know by a layperson. Nor is claim construction just a matter of substituting a definition for an individual word of a claim. Even when every word of a claim is a common word that alone might be easily understood by a layperson, claim construction is often still required to determine what the claim terms mean together in the context of the full claim and the written description of the patent. *Maytag*, 411 F. Supp. 2d at 1037-38.

## II.  DISPUTED CLAIM LANGUAGE

The Court should reject the claim constructions proposed by Excentus because, without exception, they are not supported by either the written descriptions of the asserted patents or their prosecution histories.

### 1. "a record associated with purchases made by the user, the record including the users achievement of a purchasing criteria"

Excentus' construction of this disputed claim language simply inserts three new words – "fuel and non-fuel" – to limit the meaning of the word "purchases." Excentus is not, therefore, interpreting the words of the claim. Instead, it is adding new words to the claim for the purpose of attempting to avoid prior art that will invalidate the claim. This is a classic, text book example of improperly inserting an additional limitation where none is justified by the claim language.

The disputed claim language refers simply to "a record associated with purchases made by the user" without any further limitation as to the kinds of purchases. Excentus's proposed construction improperly restricts the claimed purchases to "fuel and non-fuel purchases" – meaning both kinds of purchases are required. Once the Court becomes familiar with the prior art discovered by Kroger, which has already been disclosed to Excentus, it will be abundantly

3

clear that Excentus has slipped this limitation into its claim construction solely for the purpose of attempting to distinguish over the prior art.

Kroger's proposed construction uses the phrase "fuel <u>or</u> non-fuel purchases" only in response to Excentus's improperly limiting construction. Kroger proposed that construction only to make clear that the claim term "purchases" is broad enough to encompass either fuel purchases or non-fuel purchases, and that both are not required. Kroger, therefore, would also agree with a claim construction that simply uses the word "purchases" as long as it is understood that Excentus's proposed construction is not proper.

With respect to the remaining portion of the disputed claim language ("the record including the users achievement of a purchasing criteria") Kroger's opening claim construction brief demonstrates, with numerous citations to the '984 patent specification, that the "users achievement of a purchasing criteria" is **a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria**. Excentus argues that the plain and ordinary meaning of this claim language is sufficiently clear for a lay jury such that no construction is required. [Excentus's Opening Brief, Doc# 50, p. 7]. Excentus offers no explanation, however, of how its interpretation of the "plain and ordinary meaning" of that language differs from the meaning proposed by Kroger.

Excentus merely criticizes Kroger's proposed construction by arguing that "Plaintiffs are attempting to incorporate elements from other parts of the claim into its construction." [Excentus's Opening Brief, Doc# 50, p. 7]. But contrary to Excentus' argument, the Federal Circuit has held repeatedly that Kroger's claim construction approach is proper because the other words of a claim are important to consider in the claim construction process. *See Philips v. AWH*

*Corp.*, 415 F.3d 1303, 1314 (Fed Cir. 2005)(quoting *ACTV Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003)("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms."))]. The element immediately following the disputed claim language in claim 1 of the '984 patent states "the controller accesses said record and causes the nozzle to dispense the fuel at the discounted unit price associated with the users achievement of the purchasing criteria." Thus, the user's achievement of the purchasing criteria referred to in the claim is a determination that the user is entitlement to discounted fuel.

The written description in the patent also confirms Kroger's construction. It states that when the customer achieves a purchasing criteria, the customer's record "will include data representing the availability of a fuel discount" as shown in field 310 of Fig. 9. ['984 Patent, Doc# 45-2, col 9, ln 45-46]. Consequently, the customer's record "can be used to monitor a customers status relative to be being offered discounted fuel." [*Id*. at col 10, ln 27-30]. Thus, the user's record not only includes data from which the user's entitlement to a discount can be determined, it also includes the result of such a determination so that the customer's status relative to being offered a fuel discount can be monitored. The determination that the customer is entitled to a discounted unit price is made before the customer arrives at the pump and that fact is included in the record.

Further evidence that the customer's entitlement to a discount is determined and included in the record before the customer arrives at the fuel pump is found under the heading "SUMMARY OF THE INVENTION," in the '984 patent:

> The reward system will track the customer purchases and compare them with a predefined criteria to determine when a fuel discount is to be provided…. <u>When a customer meets one of the predefined criteria, the reward system will authorize a fuel discount or reward and provide the customer with a mechanism to obtain the</u>

5

> <u>discounted fuel.</u> This mechanism can include a bar coded receipt, data on a magnetic stripe card, an authorization identification number sequence, or the like. The reward system also notifies a controller in the fuel dispensing apparatus that a discount fuel sale is authorized for a specific authorization code, as well as the amount of the discount, e.g. $0.10 dollars per gallon.  When purchasing fuel, the customer inputs the received authorization code at the pump by scanning in the bar code from the receipt, swiping a magnetic card, entering a code on a key pad, or the like.

['984 Patent, Doc# 45-2, col 2, ln 29-50 (emphasis added)].  In order for the customer to receive a mechanism to input at the pump to obtain discounted fuel, the determination that the customer is entitled to discounted fuel must have been made before the customer arrived at the pump. Kroger's proposed construction, therefore, correctly defines the scope of the disputed claim element.

> **2. "awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product"**

Excentus's position on what the disputed claim language means is less than clear. Excentus first states:  "No Constuction Required – Plain and Ordinary Meaning (except "discount" …)."  [Excentus's Opening Brief, Doc# 50, p. 8].  Excentus next states,  "*If* construed: awarding a second representation of reduction on the PPU of the consumable good to the customer in response to a purchase by the customer of a *first* [sic] cross-marketed product."  [*Id*. (emphasis added)].   This construction, which Excentus may or may not actually be proposing, appears to include a typographical error.

Despite its lack of clarity, Excentus does believe that the Court should determine the meaning of the word "discount" because that is one of the terms that Excentus asked the Court to construe.  [Excentus Opening Brief, Doc. #50, p. 13.]  Kroger will address Excentus's proposed construction of  that term here since it appears within the disputed claim language.

6

Excentus contends that a "discount" is a "representation of a reduction." [*Id*. at 13]. There are two simple reasons why Excentus' definition of the word is wrong. First, the patent and its prosecution history do not explicitly or implicitly define the term in that manner. Second, Excentus' proposed definition is not consistent with the written description of the patent. As explained by Kroger in its opening brief, a "discount," as that term is used in the '128 patent, must be a reduction in a specified monetary amount. [Doc# 49, pp. 21-23]. If a discount is not a specified monetary amount, it would be impossible to determine the value of the discount by, as described in the patent, "multiplying the PPU discount by the number of gallons purchased." ['128 Patent, Doc# 45-4, col 8, ln 5-7]. Similarly, if a discount is not a specified monetary amount, it would be impossible to determine an adjusted price-per-unit by, as described in the patent, subtracting a total PPU discount from the PPU displayed on the pump. [*Id*. at col 7, ln 21-26].

Excentus's only argument in support of its construction is that the written description describes both price-per-unit discounts and total discounts such that "the discount is a reduction that can be represented in a number of ways". [Excentus's Opening Brief, Doc# 50, p. 13]. Excentus misses the point. First, the claim language at issue is "discount on the PPU" not just "discount." The written description describes PPU discounts and total discounts as alternatives. The claim language at issue is directed to one of the alternatives. This is precisely why Kroger properly urges that the claim terms must be construed in context with the surrounding claim language, not out of context as Excentus would like. Second, both examples provided by Excentus – a cents per unit volume reduction and an amount to be deducted from the total sale – are reductions in specified monetary amounts as Kroger contends. These examples do not support Excentus's position that a discount can be *any* representation of a reduction.

The construction proposed by Excentus is also nonsensical. For example, both the color blue and the letter A could be a "representation of a reduction." The rest of claim 1 of the '128 patent describes "adding the first discount to the second discount to determine a total discount on the PPU of the consumable good." It makes no sense, however, to add the color blue to the letter A to determine a total "representation of reduction" as described in the rest of claim 1 of the '128 patent. What makes sense in the context of the entire written description is that the awarded "discount on the PPU" is a reduction in a specified monetary amount on the price per unit as proposed by Kroger. Thus, the first "reduction in a specified monetary amount" can easily be added to the second "reduction in a specified monetary amount" to determine a total "reduction in a specified monetary amount."

Without proposing its own construction, Excentus also complains that Kroger has improperly construed the claim phrase "in response to" to mean "in exchange for." Excentus contends that Kroger's construction incorrectly "indicates that the *purpose* of the purchase of the cross-marketed product was to obtain the discount." [Excentus's Opening Brief, Doc#50, p. 9]. Excentus has it backwards. The claim language recites "awarding a … discount … in response to a purchase by the customer of a … cross-marketed product." The claim and Kroger's construction address the motivation for awarding the discount, not the customer's motivation for purchasing a cross-marketed product as Excentus suggests. The discount awarded to the customer is a *quid pro quo* tied to the purchase of a particular product that is being promoted.

Kroger's construction is correct and is supported by the specification, which describes the use of fuel discounts to promote the purchase of particular products. For example, the '128 patent describes: "Other products such as produce need to be sold fairly rapidly to avoid spoilage. These products may … be targeted to provide gasoline discounts." ['128 Patent,

8

Doc#45-4, col 4, ln 29-32]. In addition, the '128 patent explains that "[t]he HVR merchant can compare data from the HVR discounts issued database … to determine the effectiveness of cross-marketing agreements on various products." [*Id*. at col 6, ln 57-61]. The intrinsic evidence demonstrates that the discount awarded is product-specific, meaning it is awarded in exchange for the purchase of a predetermined triggering product.

### 3. "dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel"

Kroger contends that the disputed claim language means "**dispensing at no charge to the customer, rather than at a reduced unit price, a total amount of fuel equal to the sum of the first and second amounts previously awarded to the customer**." Excentus criticizes Kroger's proposed construction in several respects. Excentus does not, however, attempt to construe the disputed claim language except for the phrase "dispensing an amount of free fuel."

First, Excentus complains that Kroger construes the term "total" to mean "equal to the sum of," which Excentus argues "needlessly complicates the scope of the claim language." [Excentus's Opening Brief, Doc# 50, p. 10]. Excentus is wrong. The original claim language states in pertinent part "dispensing an amount … equal to the total of the first and second amounts." Kroger's construction correspondingly states in pertinent part "dispensing … a total amount … equal to the sum of the first and second amounts." This construction merely makes the plain and ordinary meaning of the claim language explicit -- that the "total" of a first and second amount is the sum of the first and second amounts when they are added together. Kroger's construction makes the claim language more clear, not less clear.

Second, Excentus complains that Kroger attempts to incorporate the phrase "previously awarded" into the claims when, according to Excentus, there is no "award" element in the claims. [Excentus's Opening Brief, Doc# 50, p. 10]. Kroger is not, however, inserting unnecessary

9

limitations as Excentus suggests. Although the claims do not use the term "award," Kroger's construction is justified by other language within the claims.

The claims, including independent claims 1 and 7 of the '204 patent, recite "providing the customer with a first reward" in exchange for purchases during a first visit to a store, "providing the customer with a second reward" in exchange for purchases during a second visit to the store, "identifying the customer during a *subsequent* fueling transaction" and "dispensing an amount of free fuel to the customer" equal to the total of the first and second rewards. ['204 Patent, Doc# 45-9, col 13, ln 37-57 (emphasis added)]. Kroger believes it is entirely correct and appropriate to refer to the steps of "providing … a … reward" as "awarding." Kroger also believes it is entirely correct and appropriate to the refer to the first and second rewards as having been "previously awarded" since they are, as described in the claims, provided to the customer before a *subsequent* fueling transaction.

With respect to the phrase "dispensing an amount of free fuel," Kroger contends that free fuel must be dispensed at no charge to the customer, rather than at a reduced unit price. Excentus contends that even fuel provided at a discounted price per unit is "free fuel" or at least results in some "free fuel." [Excentus's Opening Brief, Doc# 50, p. 14]. For example, Excentus argues that if a customer receives 10 gallons of fuel at a 10¢ per gallon discount, then the customer receives $1 of fuel at no charge. [*Id.*]. Excentus is just wrong. None of the 10 gallons is free, and the customer cannot receive any fuel without paying something for it. Excentus's interpretation defies common sense and is clearly not consistent with the plain and ordinary meaning of the word "free."

The only argument offered by Excentus in support of its position is that the '204 patent discloses an embodiment that provides price per gallon discounts and "[n]othing in the '204

10

Patent or its file history supports a disclaimer of the embodiment covering a price per gallon discount." [*Id*.]. Excentus could not be more wrong. Patent applicants frequently disclose but fail to claim embodiments, even without an express disclaimer, especially in divisional applications like the '204 patent. Excentus is essentially asking the Court to ignore the actual claim language and instead to construe the claims to cover every single embodiment described in the specification. Furthermore, the full prosecution history of the '204 patent, including the prosecution history of the '204 patent's parent application, makes clear that price-per-unit discount rewards are not the same as free fuel rewards because the applicant claimed them separately.

The '204 patent application was filed as a divisional application from parent application serial no. 10/679,860 ("the '860 application"), which is now abandoned. In the '860 application the applicant presented claims 45-57 by an amendment dated August 15, 2006, a copy of which is attached as Exhibit A. Presented independent claim 45 corresponds very closely to claim 1 of the '204 patent and recites the step of providing the customer with a reward receipt indicating that the customer is entitled to "a first amount of free fuel." [Ex A, p. 2 of 8]. Presented independent claim 49 recited the step of dispensing fuel at a price discounted by an appropriate "price-per-unit discount." [Ex A, p. 3 of 8]. Presented independent claim 56 recited alternative steps of "providing an incentive for the customer to purchase non-fuel products at the store by providing the customer with *an amount of free fuel* as a reward for purchasing a predefined amount of non-fuel products" and the step of "providing an incentive for the customer to purchase non-fuel products at the store by providing the customer with *a price-per-unit discount on fuel* as a reward for purchasing a predefined amount of non-fuel products." [Ex A, p. 4 of 8 (emphasis added)]. Thus, the applicant presented an independent claim directed to providing

11

customers with "free fuel" type rewards (claim 45), a separate independent claim directed to providing customers with "price-per-unit discount" type rewards (claim 49) and a separate independent claim directed to providing customers with the possibility of a "free fuel reward" or a "price-per-unit discount" reward (claim 56).

In contemporaneous remarks, the applicant explained that "New claims 45-57 have been drafted strictly from the disclosure of parent U.S. Patent Application No. 09/026,634, now U.S. Patent No. 6,112,981 (McCall '981)."  The applicant further argued that (1) "New independent claim 45 is based on Example B (FIGS. 5-6) disclosed in column 6, lines 1-18 of McCall '981," and (2) "New independent claim 49 is based on Example C (FIG. 7) disclosed in column 6, lines 21-32 of McCall '981." [Ex A, p. 6-7 of 8].  Example B of McCall '981, which is reproduced in the '204 patent at column 6, line 51 through column 7, line 2, describes "a reward program that gives free gasoline" in which the customer receives, for example, a receipt indicating "a free $1 worth of gasoline."  ['204 Patent, Doc# 45-9, col 6, ln 54-64].  Example C, which is reproduced in column 7 of the '204 patent, describes providing a cardholder with an appropriate benefit "(e.g., a 10 cent per gallon discount)." ['204 Patent, Doc#45-9, col 7, ln 6-12].  The applicant went on to argue that "New independent claim 56 is a generic claim covering claims 45, 49, and 51." [Ex A, p. 7 of 8]   Accordingly, it is apparent that the patent applicant considered free fuel rewards to be different from price-per-unit discount rewards, in contrast to what Excentus now contends.

In response to the applicant's claim amendments, the Examiner withdrew from consideration all claims except independent claim 49 and claim 50, which depended from claim 49.  [Office action mailed November 9, 2006, attached as Exhibit B, pp. 2-3].  According to the Examiner, "Newly submitted claims 45-48, 51-55 and 56-57, [are] directed to an invention that is

independent or distinct from the invention originally claimed." [*Id*. at p. 2]. As previously described above, claim 49 recited a "price-per-unit discount" while claims 45 and 56 both recited an "amount of free fuel." The Examiner further explained: "Since applicant received an action on the merits for the originally presented invention [i.e., claim 49], this invention has been constructively elected by original presentation for prosecution on the merits. Accordingly, claims 45-48, 51-55 and 56-57 are being withdrawn from consideration as being directed to a non-elected invention." [Ex B, p. 3]. Accordingly, the Examiner, like the applicant, considered free fuel rewards to be separate and distinct from price-per-gallon discount awards. The Examiner then went on to make a final rejection of claims 49 and 50 under 35 U.S.C. §102 as being anticipated by the prior art. [*Id*. at p. 5-6].

In response to the final rejection of claim 49 and 50, both of which recited price-per-unit discounts, the applicant abandoned the '860 application. [Notice of Abandonment, attached as Exhibit C]. In its place the applicant filed a related divisional application that issued as the '204 patent. By preliminary amendment before examination, the claims of the '204 patent application were amended to recite "free fuel" as in claim 45 of the '860 application, which had been withdrawn as a distinct invention. ['204 Prosecution History, Doc# 45-9, PageID# 1844-45,1850-56]. In contemporaneous remarks the applicant explained:

> In the parent application, U.S. Patent Application No. 10/679,860, Examiner Janivier restricted the claims into four groups in an Office Action dated November 9, 2006. The groups comprised:
>
>     Group 1: Claims 45-48.
>     Group 2: Claims 49 and 50.
>     Group 3: Claims 51-55.
>     Group 4: Claims 56 and 57.
>
> The pending claims in this divisional application relate to Group 1.

['204 Prosecution History, Doc# 45-9, PageID# 1856].   The applicant failed to present a claim that was generic to both the price-per-unit discount type rewards and the free fuel type rewards.

From this prosecution history, it is clear that Excentus's only argument in its opening claim construction brief is incorrect.  The patent applicant *did* disclaim the embodiments directed to price-per-unit discounts and made no attempt to protect those embodiments in the '204 patent.  Instead the applicant elected to pursue embodiments directed to free fuel, which the Examiner and the applicant had considered to be a distinct invention.

It should also be pointed out that even Excentus's proposed construction does not cover price-per-gallon discounts as Excentus would have the Court believe.  Excentus contends that "dispensing an amount of free fuel" means "providing some fuel at no charge."  [Excentus's Opening Brief, Doc# 50, p. 14].  Providing all fuel at a reduced unit price, however, does not provide some fuel at no charge as Excentus contends.

### 4. "increasing customer use of third-party financial cards issued by a plurality of issuers"

Excentus contends that the disputed claim language should not be given any effect because it appears in the preamble of claim 1 of the '942 patent.  For the reasons stated in Kroger's Opening Brief, this claim language, which was added by amendment and relied upon by the applicant to distinguish the claim over the cited prior art, is now a limitation of the scope of the claim that the public is entitled to rely on.  *Catalina Mktg. Int'l, Inc., v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

Kroger contends that the claim language means "**increasing use of multiple, different payment cards issued to customers by multiple, different issuers that are unrelated to the fuel merchant**."  The substance and spirit of this construction is fully supported by the patent's prosecution history as detailed in Kroger's Opening Claim Construction Brief.  Excentus

14

criticizes Kroger's construction in several respects but does not offer the Court any meaningful alternative. Excentus once again merely contends that no construction is required and that the claim language should have its plain and ordinary meaning, without explaining what that meaning is.

Excentus complains that Kroger improperly construes the term "financial cards" to mean "payment cards." The remaining portion of the preamble of claim 1, however, recites "wherein the third-party financial cards are selected from a group consisting of credit cards and debit cards," both of which are cards used for payment at the pump. In addition, the specification states "the present invention provides a PPU discount for fuel based on the type of credit card or the issuer of the credit card *utilized to purchase the fuel*." ['942 Patent, Doc# 45-11, col 3, ln 27-29 (emphasis added)]. Similarly, the applicant stated during examination that "all of the claims now recite more clearly that the amount of a discount that a customer receives for fuel is dependant upon the issuer of *a credit facility*." ['942 Prosecution History, Doc#45-12, PageId# 2112 (emphasis added)]. Kroger believes that the term "payment card" accurately captures what is claimed and is clearer than the term "financial card."

5. **"increasing customer use of a third-party financial card issued by a third-party issuer, wherein the third-party financial card is selected from a group consisting of different issuers of credit cards"**

Excentus agrees with Kroger that the disputed language should be construed in the same manner as the preamble of claim 1 of the '942 patent. [Excentus's Opening Brief, Doc# 50, pp. 10 and 12]. As with the preamble of claim 1, however, Excentus contends that the disputed claim language should not be given any effect because it appears in the preamble of claim 9 of the '942 patent. For the reasons stated in Kroger's Opening Brief, this language, which was added by amendment and relied upon by the applicant to distinguish the claim over the cited prior art, is

15

now a limitation of the scope of the claim that the public is entitled to rely on. *Catalina Mktg. Int'l, Inc., v. Coolsavings.com, Inc*., 289 F.3d 801, 808 (Fed. Cir. 2002).

6. **"discount"**

This claim term was already addressed above in disputed phrase number 2, which was identified by Kroger for construction. As previously explained, Excentus's proposed construction is not supported by the intrinsic record, and is inconsistent with the manner in which the term "discount" is used in the specification.

7. **"dispensing an amount of free fuel"**

This phrase was already addressed above in disputed phrase number 3, which was identified by Kroger for construction. As previously explained, Excentus's proposed construction is not consistent with the ordinary meaning of the word "free" and, moreover, is contrary to the prosecution history of the '204 patent and its parent application.

8. **"means for providing the customer with a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel products or services in the first visit, and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit"**

Kroger agrees with Excentus that the disputed claim language, which appears in claim 7 of the '204 patent, is drafted in means-plus-function format and is subject to 35 U.S.C. §112, paragraph six. Excentus makes no effort to construe the stated function even though the language contains the disputed phrase "free fuel," which Excentus previously attempted to construe. Excentus only contends that the structure for performing the claimed function is a computing center, computer, server or equivalent thereof. [Doc# 50, p. 15].

Kroger contends that the disputed claim language is indefinite because the specification of the '204 patent does not clearly link the recited function with the specific structure required to

16

perform the function. Excentus has not countered that contention by providing a citation to any clear link in the specification. Excentus cites to column 1, line 64 through column 2, line 4, but that passage merely repeats the claim language. Excentus cites column 4, line 57 through column 5, line 12, but that passage seems to be completely irrelevant. Excentus cites column 10, lines 36 through 53, but that passage does not refer to or describe the claimed function of providing the customer with either a first reward or a second reward. Excentus also cites Figure 10, but that flow chart shows a different embodiment that provides fuel discounts, not free fuel. Furthermore, Figure 10 recites at 406 the step of providing the customer with a discount coupon, bar code, magnetic stripe, etc., without reference to any particular structure. It is unclear how a general purpose computer or server, as Excentus alleges, could provide the customer with a reward such as a discount coupon or a magnetic stripe. Some additional, unidentified structure would be required. Kroger, therefore, contends that the disputed limitation is indefinite and invalid.

9. **"associating the identified third-party issuer of the financial card with the stored PPU discount for the fuel"**

Excentus argues that the disputed claim language, which appears in claim 1 of the '942 patent, merely means "associating the proper per unit discount with each issuer." That construction cannot be correct because it does not account for the requirement that a single, *identified* issuer is associated with a *stored* discount that is specific to that issuer. Excentus's proposed construction rearranges the words of the claim to change its meaning. Whereas claim 1 recites the steps of "identifying a third-party issuer" and then "associating the identified third-party issuer … with … the stored PPU discount," Excentus changes the claim to mean associating a per unit discount (stored or not stored) with *each* issuer rather than the specifically identified issuer. This construction is not consistent with the written description.

17

The specification of the '942 patents states that first the BIN range on a customer's card is used to "identify the card issuer."  ['942 Patent, Doc# 45-11, col 4, ln 41-42,  col 4, ln 67- col 5, ln 4].  The card issuer ID is then used to access a relationship database and retrieve an associated PPU discount for the issuer.  [*Id*. at col 5, ln 4-6].  This description is consistent with the Examiner's stated reasons for allowance, which provided:

> The prior art taken alone or in combination does not teach the combinations of the claim limitations, as recited in independent claims 1 and 11, or more particularly a method of reading a customer's financial card during a fuel transaction, *identifying a third-party issuer of the financial card and a specific PPU (price-per-unit) discount of fuel stored in a database under the financial card issuer identification* and providing the specific price-per-unit (PPU) or price-per-gallon (PPG) discount on fuel to the customer as specified by the issuer during a fuel transaction at a participating fuel merchant.

['942 Prosecution History, Doc# 45-12, PageID# 2009 (emphasis added)].

Based on this description and Kroger's constructions of other limitations that provide antecedent basis for terms within the disputed phrase, Kroger contends that the claim language means "**associating the identity of the third-party financial card issuer with the stored price per unit reduction in a specified monetary amount to which the customer is entitled for using the third-party issuer's financial card, where the third party issuer is unrelated to the fuel merchant**."

### III.  CONCLUSION

Kroger respectfully submits that Excentus has failed to support its claim constructions with specific citations to the patent specifications or prosecution histories.  With respect to terms such as "discount" and "free fuel," Excentus urges this Court to adopt constructions that are clearly beyond the common sense meaning of those terms.  Kroger's proposed constructions are not only consistent with the words of the claims, they are also supported by and in some cases required by the written descriptions and prosecution histories of the asserted patents.

18

Accordingly Kroger respectfully requests that the Court adopt its proposed claim constructions.

        Respectfully submitted,

        */s/ Jeffrey C. Metzcar*
        Jeffrey C. Metzcar (0072648)
        THOMPSON HINE LLP
        2000 Courthouse Plaza, N.E.
        10 West Second Street
        Dayton, Ohio 45402
        Phone:  (937) 443-6841
        Fax:  (937) 443-6635
        Email:  Jeff.Metzcar@ThompsonHine.com

        Stephen J. Butler (0010401)
        Heather M. Hawkins (0078569)
        THOMPSON HINE LLP
        312 Walnut Street, Suite 1400
        Cincinnati, Ohio 45202
        Phone:  (513) 352-6700
        Fax:  (513) 241-4771
        Email: Steve.Butler@ThompsonHine.com
              Heather.Hawkins@ThompsonHine.com

        Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.  Parties may access this filing through the Court's system.

        */s/ Jeffrey C. Metzcar*
        Jeffrey C. Metzcar

671566.6