IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| THE KROGER CO. et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No.  1:10-CV-161-SSB |
| | § § | Judge Sandra S. Beckwith |
| EXCENTUS CORPORATION, a Texas Corporation, | § § § | |
| Defendant. | § § § § | |

**EXCENTUS CORPORATION'S RESPONSE TO PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF**

Defendant and Counter-Plaintiff Excentus Corporation ("Excentus") files its Response to the Plaintiffs' Opening Claim Construction Brief ("Opening Brief") pursuant to the Local Patent Rules for the U.S. District Court for the Southern District of Ohio ("Local Patent Rules").  *See* S. D. Ohio Pat. R. 105.4(b).

**I.      INTRODUCTION**

Words have an accepted meaning.  Absent the inventor acting as his own lexicographer, the Plaintiffs should not be allowed to change the scope of the claimed inventions by redefining easily understood words that require no explanation.

When construing (or declining to construe) claim terms and phrases in this case, it is useful to keep sight on the common inventive concepts that permeate the asserted patents.  The inventions at issue are primarily directed towards methods and systems in which the sales of non-fuel products are used to drive sales of fuel (and vice versa) via incentives such as discounts on fuel:

90556192.4

1



From the Plaintiffs' Opening Brief (Docket Entry No. 59), it is clear what terms or phrases are actually "in dispute," notwithstanding the Plaintiffs' insistence that entire claim limitations require construction. Therefore, Excentus will focus on these disputed terms.

## II. CLAIM CONSTRUCTION ARGUMENT

This Court should reject the Plaintiffs' attempts to narrow the appropriate claim scopes of all of the asserted claims and should instead construe claim terms as having their plain and ordinary meaning. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (district courts not required to construe all of the claim terms in every asserted patent claim). District courts are not required to restate every claim term to comply with the *Markman* directive that claim construction is a matter of law. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction "not an obligatory exercise in redundancy").

Throughout their briefing, the Plaintiffs violate multiple tenets of claim construction by consistently mischaracterizing the intrinsic evidence in this case as limiting, disavowing, or disclaiming the scope of the asserted claims. Specifications may reveal special definitions of

90556192.4

words that are imparted by the patentee or disclaimers of claim scope. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315, 1323 (Fed. Cir. 2005) (en banc). Although claims are read in view of the specification, however, limitations from the specification must not be imported into the claims. *Id.* at 1315, 1323. Similarly, claims are not confined to embodiments disclosed in the specification even "if a patent describes only a single embodiment." *Id.* at 1323. Any disclaimer or disavowal of claim scope must be "clear and unmistakable." *Market Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1377 (Fed. Cir. 2009).

### A. "a record associated with purchases made by the user, the record including the users achievement of a purchasing criteria"

| Excentus' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| a record associated with **fuel and non-fuel purchases** made by the user, the record including the **users achievement of a purchasing criteria** | a record associated with **fuel or non-fuel purchases** made by the user, the record including a **determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria** |

The meaning of the phrase "users achievement of purchasing criteria" appears to be the primary dispute, though the Plaintiffs also object to Excentus' addition of "fuel and non-fuel" to clarify the scope of "purchases."

*"Purchases"*

Excentus proposes that "purchases" be construed as "fuel and non-fuel purchases." The specification makes clear that the record is associated with both fuel and non-fuel purchases, and in fact, both are necessary for the record in the claimed invention to serve its purpose. *See* '984 Patent, Col. 11, lines 30 – 32 ("Server 204 then updates the customer record 208 in database 206 to reflect that the discount was used."); Col. 2, lines 58 – 61 ("Upon completion of the transaction, the controller notifies the reward system that the discount fuel has been purchased by the customer. The reward system then updates the record for this customer accordingly.");

Col. 2, lines 26 – 29 ("Broadly, a data processing system is provided that implements customer rewards and includes a database that creates and maintains records associated with customers that make purchases at an associated store."). The '984 Patent claims a system in which the sales of non-fuel products are used to drive sales of fuel (and vice versa). This construction is precisely in line with what the invention accomplishes: the ***integration*** of a customer purchase reward system with a fuel dispensing apparatus. *See* '984 Patent, Col. 2, lines 14-16. Before the '984 Patent, non-fuel (priced to the second decimal point at $2.50) could not be used to trigger discounts on fuel (priced to the third decimal point at $3.299) and vice versa. This system solved that problem and is flourishing today.

### *"Users Achievement of Purchasing Criteria"*

The Plaintiffs also argue that "users achievement of purchasing criteria" means "a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria." As explained in Excentus' Opening Brief, the Plaintiffs are attempting to incorporate elements from other parts of the claim into its construction of this limitation (e.g., "discounted unit price" is referenced in the second and fifth claim limitations, not this fourth claim limitation). By expanding the scope of what is allegedly required to be included in the "record," the Plaintiffs hope to limit the overall scope of the claim. The Plaintiffs would prefer that the "record" include not only (1) the users achievement of purchasing criteria, *which is in the claim*, but also (2) a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria, *which is not in the claim*. The Plaintiffs cite to embodiments and examples disclosed in the specification in an effort to improperly import limitations from the specification into the

90556192.4

4

claims, or to limit the claims to disclosed embodiments, which is equally improper. *See id.* at 1315, 1323.

There is no evidence in the intrinsic record, however, that the record at issue must contain "a determination that a particular user is entitled to a particular discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria." What the record must contain is the "users achievement of a purchasing criteria." Whether that achievement entitles the user to a discounted unit price based on a particular achievement level is not a required part of the record. In fact, the plain language of the claim states that "the controller accesses the record and causes the nozzle to dispense the fuel at the discounted unit price associated with the users achievement of the purchasing criteria." *See* '984 Patent, Claim 1.

Claim 1 makes it clear, therefore, that the controller causes the fuel to be dispensed at the discounted unit price associated with the users achievement of the purchasing criteria, *not* that the controller causes the fuel to be dispensed at the discounted unit price stored in the accessed record, which is precisely how the Plaintiffs want this claim construed. The users achievement of purchasing criteria can be stored in the record in any number of ways (e.g., discounts, points, levels, particular items), but while a determination is eventually made that the user is entitled to a discounted unit price, there is no requirement in the claims that the discount itself be contained in a record. *See Phillips*, 415 F.3d at 1314 (claims themselves provide "substantial guidance" for claim meanings).

The plain and ordinary meaning of "users achievement of purchasing criteria" is sufficiently clear for a lay jury to understand. The Plaintiffs seek to import limitations (e.g., discounted unit prices, specific discount entitlements, etc.) from the specification into the claims

90556192.4

5

at issue. This is an improper construction of users achievement of purchasing criteria. The phrase at issue should be construed in accordance with its plain and ordinary meaning: "a record associated with fuel and non-fuel purchases made by the user, the record including the users achievement of a purchasing criteria."

<b><u>Plaintiffs' Limitations to be Construed</u></b>

With respect to this entire limitation identified by the Plaintiffs as requiring construction, even the Plaintiffs concede that they are requesting construction of two (if not three) terms or phrases and counting them as a single term. *See* Plaintiffs' Opening Brief, Docket Entry No. 59, at 6 ("The parties dispute the meaning and scope of the claim language in at least two important aspects.").

**B.** <u>"awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product"</u>

| Plaintiffs' Proposed Construction | Excentus' Proposed Construction |
|---|---|
| awarding a second **product-specific reduction in a specified monetary amount** on the price per unit of the consumable good to the customer **in exchange for** a purchase by the customer of a second **predetermined product being marketed**<br><br>*3 TERMS* | No Construction Required – Plain and Ordinary Meaning (except "discount" – *see* Section F, *infra*)<br><br>If construed: awarding a second representation of reduction on the PPU of the consumable good to the customer in response to a purchase by the customer of a first cross-marketed product |

This limitation is present in claims 1-4 of the '128 Patent. The following are the distinct terms/phrases from the limitation that the Plaintiffs want construed:

| Claim Term/Phrase | Plaintiffs' Proposed Construction |
|---|---|
| discount | product-specific reduction in a specified monetary amount |
| in response to | in exchange for |
| cross-marketed product | predetermined product being marketed |

90556192.4

### *"discount"*

For Excentus' proposed construction of "discount" in the '128 Patent, *see* the discussion in Section F, *infra*.

### *"in response to"*

"In response to" should be given its plain and ordinary meaning.  The Plaintiffs correctly note that the Applicant amended the claim so that "based on" was changed to "in response to" because "Applicant feels this is a more precise recitation of his method."  *See* '128 Patent File Wrapper, Docket Entry No. 45-7, PAGEID # 1708.  Although the Applicant amended the claims to more precisely claim his invention by using the words "in response to," the Plaintiffs claim they can be more precise by replacing "in response to" with "in exchange for," even though these words have different meanings.  Regardless, nothing in the intrinsic record suggests that "in response to" should be given anything other than its plain and ordinary meaning, and neither the Court nor the jury will have any problem understanding what "in response to" means.  *See Phillips*, 415 F.3d at 1313-14 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

### *"cross-marketed product"*

"Cross-marketed product" should also be given its plain and ordinary meaning (i.e., a product that is cross-marketed).  What the Plaintiffs argue is tying a particular monetary discount to a particular product based on the product's identity.  Contrary to what the Plaintiffs contend, however, the asserted claims do not contain a limitation "evaluating the identity of each product purchased."  *See* Plaintiffs' Opening Brief, Docket Entry No. 59, at 8.  That is, the

awarding of the discount is in response to the purchase of a cross marketed-product (*see* Claim 1), but the claims do not characterize the nature (or amount) of the discount based on the identity of the cross-marketed product, whatever that cross-marketed product might be. In fact, nothing in the claims suggests that the awarded discount is in any way tied to the cross-marketed product, other than the fact that the discount is awarded in response to the purchase of a cross-marketed product. Therefore, "cross-marketed product" should be given its plain and ordinary meaning, and the Plaintiffs' attempts to import limitations into the asserted claims should be rejected.

### C. "dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel"

| Plaintiffs' Proposed Construction | Excentus' Proposed Construction |
|---|---|
| dispensing **at no charge** to the customer, **rather than at a reduced unit price,** a total amount of fuel **equal to the sum of** the first and second amounts **previously awarded to the customer**<br><br>*3 TERMS* | No Construction Required – Plain and Ordinary Meaning (except "dispensing an amount of free fuel" – *see* Section G, *infra*) |

This limitation is present in all of the asserted claims of the '204 Patent. The following are the distinct terms/phrases from the limitation that the Plaintiffs want construed:

| Claim Term/Phrase | Plaintiffs' Proposed Construction |
|---|---|
| free | at no charge, rather than at a reduced rate |
| total | equal to the sum of |
| (additional element added by Plaintiffs) | previously awarded to the customer |

*"free"*

For Excentus' proposed construction of "free" in the '204 Patent, *see* the discussion in Section G (i.e., "dispensing amount of free fuel").

***"total"***

"Total" should be given its plain and ordinary meaning. "Total" is a term that any layperson can understand and giving "total" a construction of "equal to the sum of" does nothing to clarify the scope of this limitation, and instead, complicates the scope of the claim language.

With respect to Plaintiffs' attempt to incorporate "previously awarded to the customer" into this limitation, there is no "award" element in the claims. The Plaintiffs are trying to incorporate an "awarding step" into the claims by improperly adding in the additional element of "previously awarded" into the claims at issue.

### D. <u>"increasing customer use of third-party financial cards issued by a plurality of third-party issuers"</u>

| **Plaintiffs' Proposed Construction** | **Excentus' Proposed Construction** |
|---|---|
| increasing use of **multiple, different payment cards** issued **to customers by multiple, different issuers that are unrelated to the fuel merchant**<br><br>*3 TERMS* | No Construction Required – Plain and Ordinary Meaning<br><br>If construed: increasing customer use of third-party financial cards issued by more than one third-party issuer |

This language is included in the *preamble* of Claims 1 through 8 and should not be given any effect, nor does it require any construction as a result. *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). A preamble is not limiting when the body of the claim is structurally complete and the preamble can be considered as duplicative of limitations in the body of the claim. *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358-59 (Fed. Cir. 2010).

This claim preamble merely introduces the concept of third-party issuer, but this concept was also included in the amendments to limitations in the body of the claims. The portion of the preamble identified by the Plaintiffs duplicates the body of the structurally complete claim and

90556192.4

is, therefore, not limiting. *See id.* For example, the amendment to claim 1 was made "to distinguish the claimed inventions from Hisey," which discloses a private label merchant card that can be used only at the merchant. *See* '942 Patent File Wrapper, Docket Entry No. 45-15, PAGEID # 2428. The amendment at issue clarified that a third party issues a financial card that could be used anywhere and that it is not a card exclusive to a particular merchant. *See id.* That "third-party issuer" clarification, however, was also incorporated into the body of the claim in the same amendment (i.e., "third-party issuer" incorporated into the "storing," "identifying," and "associating" steps of the claim). Therefore, because the body of the claim is structurally complete without reference to the claim preamble, the preamble should not be given any effect. *See Am. Med. Sys., Inc.*, 618 F.3d at 1358-59.

Should the Court determine that the preamble of Claims 1 through 8 is limiting and requires construction, the following are the distinct terms/phrases from the limitation that the Plaintiffs want construed:

| Claim Term/Phrase | Plaintiffs' Proposed Construction |
|---|---|
| third-party financial cards | multiple, different payment cards |
| (additional element added by Plaintiffs) | to customers |
| a plurality of third-party issuers | multiple, different issuers that are unrelated to the fuel merchant |

*"third-party financial cards"*

The terms in these claims should be given their plain and ordinary meaning. Contrary to what the Plaintiffs argue, "financial" does not mean "payment" and "third-party" does not mean "multiple, different." Both of these claims term are easily understood by a layperson and require no construction.

*"plurality of third-party issuers"*

Nowhere in the intrinsic record is there anything to suggest that the third-party issuer must be "unrelated to the fuel merchant" as the Plaintiffs contend. In fact, the claim language itself *requires* that the third-party issuer be related to the fuel merchant through the affinity-type agreement that defines the relationship between the two. *See* '943 Patent, Claim 1; *see also Phillips*, 415 F.3d at 1314 (claims themselves offer substantial guidance as to their meaning).

E. **"increasing customer use of a third-party financial card issued by a third-party issuer, wherein the third-party financial card is selected from a group consisting of different issuers of credit cards"**

| Plaintiffs' Proposed Construction | Excentus' Proposed Construction |
|---|---|
| increasing use of **multiple, different payment** cards issued **to customers** by **multiple, different** issuers **that are unrelated to the fuel merchant** | No Construction Required – Plain and Ordinary Meaning<br><br>If construed:  increasing customer use of third-party financial cards issued by more than one third-party issuer |

For the same reasons discussed above in Section II.D, *supra*, this language is included in the *preamble* of Claims 9 through 16 and should not be given any effect, nor is any construction required as a result. *See Allen Eng'g Corp.*, 299 F.3d at 1346.

Should the Court determine that the preamble of Claims 9 through 16 is limiting, because the Plaintiffs propose the identical construction for this limitation as they did in Section D above, Excentus relies on the same arguments and construction principles identified above with respect to Section D.

**Excentus' Terms/Phrases to be Construed**

F.  **"discount"**

| Excentus' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| representation of reduction | reduction in a specified monetary amount |

This claim term is present in all of the asserted claims of the '128 Patent.  The intrinsic evidence establishes that a "discount" is a "representation of reduction."  *See* Excentus Opening Brief, Docket Entry No. 50, at 13.  Although particular embodiments are described in the specification of the '128 Patent, these are exemplary and not limiting.  Discount is used in the claim language in the context of, for example, awarding a discount on the price per unit of a consumable good, but the discount is a reduction that can be represented in a number of ways.  *See* '128 Patent, Claim 1.

The Plaintiffs support their position that "discount" must mean a "reduction in a specified money amount" by isolating a single function of an embodiment described in the specification (i.e., multiply PPU discount times the number of gallons to determine the value of the discount), which is marginally consistent with the Plaintiffs' proposed construction, and then attempting to show how Excentus' proposed construction will not fit cleanly into this limited embodiment scenario.  This is nothing more than an attempt to improperly exclude "points" from the scope of the term "discount."  However, as long as the discount (regardless of how it is represented) reduces the PPU of a consumable good, it remains in the scope of the claimed invention.  And although points can certainly discount the PPU of the consumable good, the express inclusion of "points" in the construction of "discount" is not required and should be left to the finder of fact charged with determining infringement.  *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998).

While no particular type of discount was disclaimed in the intrinsic evidence, many different representations of reduction are disclosed in the specification of the '128 Patent. For example, in Figure 2, it is clear that the discount can be represented in "CENTS PER FUEL UNIT VOLUME" (Field 5) or as an "AMOUNT TO BE DEDUCTED FROM TOTAL SALE" (Field 7). *See, e.g.*, '128 Patent, Fig. 2. Further, the specification states that a discount could be a reduction of "$0.02 per gallon" (Col. 1, lines 66-67) or a "total discount instead of a PPU discount" (Col. 5, line 55 – Col. 6, line 2). As the intrinsic evidence makes clear, therefore, discount should be construed broadly as a "representation of reduction," which could include, but not be limited to, a percentage representation of reduction, a points representative of a reduction, or a specific monetary representation of reduction. There is no "clear and unmistakable" disclaimer or disavowal of any form of discount in the intrinsic evidence. Therefore, Excentus' proposed construction for "discount" as "representation of reduction" is consistent with the appropriate scope of the asserted claims. *See Market Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1377 (Fed. Cir. 2009).

In an apparent non-infringement argument, the Plaintiffs also seek to demonstrate that extrinsic evidence in the form of a patent application that was *filed* 3 ½ years *after* the '128 Patent was *issued* is somehow relevant. *See* Plaintiffs' Opening Brief, Docket Entry No. 59, at 11. The Plaintiffs appear to argue that because the specification of an entirely different invention included a reference to "points," then points must not be included in the scope of discount as used in a completely different patent. Simply because one embodiment described in the '942 Patent indicates that points may be converted to a PPU discount does not suggest, however, that points are excluded from the scope of "discount" in a completely different application filed years earlier. In fact, the "points" disclosed in the '942 Patent are not claim

terms, but rather are words used to describe embodiments in the specification. *See* '942 Patent, Col. 6, lines 16-18. Regardless, the Plaintiffs' focus on infringement issues instead of claim construction issues is inappropriate at this stage of the litigation. *See PPG Indus.*, 156 F.3d at 1355.

G. **"dispensing an amount of free fuel"**

| Excentus' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| providing some fuel at no charge | dispensing **at no charge to the customer, rather than at a reduced unit price**, an amount of fuel |

The dispute over this phrase appears to be whether "dispensing *an amount* of free fuel" means "dispensing [exclusively] free fuel," which is the Plaintiffs' position but runs contrary to the claim language. "Dispensing ***an amount*** of free fuel," however, implicitly establishes that there can be an amount of fuel that is not free that will also be dispensed. Providing some fuel at no charge and providing some fuel at a charge is an embodiment disclosed in the specification. *See, e.g.*, '204 Patent, Fig. 10, at step 409[1] ("Pump Adjusts Gas Price for Authorized Transaction"). And as noted by the Plaintiffs, dispensing exclusively free fuel is also an embodiment (appropriately titled "Example B") that is disclosed in the specification. *See* Plaintiffs' Opening Brief, Docket Entry No. 59, at 13.

Neither of these embodiments limit the claims at issue, however, nor would they even if one embodiment was the only embodiment disclosed in the specification. *See Phillips*, 415 F.3d at 1323. Had the patentee wanted to claim "dispensing free fuel," he would have done so. Instead, the patentee claimed "dispensing an amount of free fuel," which embraces a much wider range of embodiments (e.g., an amount of free fuel and an amount of fuel that is not free)

---

[1] If the pump adjusts the unit gas price downward, the discounted unit price results in the pump dispensing an amount of free fuel and an amount of non-free fuel.

90556192.4

than the Plaintiffs would have this Court exclude by improperly importing a limitation from a particular embodiment into the claims. *See id.* at 1315, 1323.

Further, the Plaintiffs' insistence that "dispensing an amount of free fuel" is somehow inconsistent with a fuel "discount" is based on a fundamental misunderstanding of the claim scope. In the '204 Patent, dispensing an *amount* of free fuel is directed to a *volume* measure of fuel, while dispensing fuel at a *discount* is directed to a *price* measure of fuel. Therefore, the incentive provided can be *measured* in a variety of ways (e.g., price vs. volume), but the outcome can be the same and dispensing an amount of free fuel and dispensing fuel at a discount are two different ways to describe the incentive provided (i.e., providing some fuel at no charge).

Finally, Excentus notes that if a customer "buys four and gets one free" is the customer receiving one for free *or* is the customer receiving five at a discounted price? The latter is the case and is consistent with Excentus' construction of "dispensing an amount of free fuel" as "providing some fuel at no charge." A definition of "free" that corresponds with a pure gift is not a definition contemplated by the patentee or supported by the intrinsic evidence. The asserted patent claims require a purchase in order to receive a discount.

### H. "means for providing the customer with a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel products or services in the first visit, and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit"

This claim limitation ("means for providing") is subject to 35 U.S.C. § 112, paragraph six and is present in claims 7, 8, 9, 12, and 13 of the '204 Patent. Despite this claim limitation satisfying the statutory requirements for patent eligibility, Plaintiffs argue that this means-plus-function claim element is indefinite with respect to structure and algorithm. However, as

90556192.4

15

established in Excentus' Opening Brief, the structure for performing the claimed function is a computing center, computer, server or equivalent thereof, and the algorithm, which the Plaintiffs suggest is missing, is shown in Figure 10.[2] The Plaintiffs want to restrict the scope of this means-plus-function element, when the purpose of such elements is to avoid the recital of structure in the claims, and instead to cover the structure disclosed in the specification as well as any equivalents thereof. 35 U.S.C. § 112; *see also* Plaintiffs' Opening Brief, Docket Entry No. 59, at 14 ("Is a bar coded receipt printer required? A magnetic encoder? A database?").

The specification establishes that "providing the customer with a first reward . . . and . . . a second reward" can be performed using a server that updates a database containing the customer's record, which the server then analyzes to provide the customer with a first reward and a second reward. *See, e.g.*, Col. 10, lines 34-47. Therefore, the server and the database effectively comprise the structure that performs the claimed function. Further, steps 402 (Data Provided to Server. Update Database), 403 (Server Analyzes Customer Record), and 404 (Gas Discount Earned?) in the flow chart set forth in Figure 10 disclose an algorithm sufficient for one of ordinary skill in the art to understand the scope of the claim. *See AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1245 (Fed. Cir. 2007) ("[A]lgorithms in the specification need only disclose adequate defining structure to render the bounds of the claim understandable to one of ordinary skill in the art."); *see also Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) ("This court permits a patentee to express that algorithm in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any manner that provides sufficient structure." (citations omitted )).

---

[2] Additional support is found at Column 1: line 64 through Column 2: line 4, Column 4: line 57 through Column 5: line 12, and Column 10: lines 36-53 (e.g., a server performs the claimed function).

90556192.4

16

One of ordinary skill in the art would understand the structure disclosed by a server that (1) updates a database record with purchase information and (2) analyzes the record to provide the customer with a reward. *See, e.g.*, Col. 10, lines 34-47; *see also* Figure 10, at steps 402, 403, and 404. This process is analogous to (1) importing data into an Excel spreadsheet and (2) using that data - which is structure that many laypersons understand and that someone of ordinary skill in the art comprehends. *See AllVoice Computing PLC*, 504 F.3d at 1245. Therefore, this means-plus-function limitation is satisfied by a server and a database that function in this way, or any equivalent thereof. *See* 35 U.S.C. § 112.

### I. "associating the identified third-party issuer of the financial card with the stored PPU discount for the fuel"

| Excentus' Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| associating the proper per unit discount with each issuer | associating the identity of the third-party financial card issuer with the stored price per unit **reduction in a specified monetary amount to which the customer is entitled for using the third-party issuer's financial card, where the third-party issuer is unrelated to the fuel merchant** |

Consistent with the plain and ordinary meaning of the terms used in this limitation, the '942 Patent discloses that the claimed invention associates a per unit discount with the issuer of the financial card. *See, e.g.*, '942 Patent, Col. 4, lines 41-46 ("The BIN range from the card number is utilized to identify the card issuer, and at step 14 the dispenser controller retrieves an associated PPU discount from a relationship database."). Typical of the Plaintiffs' outcome-based claim construction strategy, the Plaintiffs are content to use the construction of "discount" from an unrelated patent (i.e., the '128 Patent), but their proposed construction is similarly unsupported by the intrinsic evidence. *See* '942 Patent, Col. 4, lines 1-13 (specification

discloses percentage discounts on the price of fuel). The Court should reject the Plaintiffs' attempt to read a disclosed embodiment out of the claims.

The Plaintiffs' attempts to improperly import limitations in the claims (e.g., "third-party issuer is unrelated to the fuel merchant") were addressed earlier (*see* Section II.D, *supra*), but are nothing more than the Plaintiffs adding twenty-three new words to the end of the claim phrase. The Plaintiffs' proposed construction is contrary to the plain and ordinary meaning of this phrase and the principles of claim construction, and should be rejected in its entirety.

### III. CONCLUSION

Although the Plaintiffs contend that entire limitations require construction in this case, Excentus respectfully asserts that only a select few terms and phrases require any construction at all. In many instances, the Plaintiffs argue that the patentee disclaimed certain subject matter or claim scope, but there is nothing in the intrinsic evidence to suggest that a requisite "clear and unmistakable" disclaimer was made or that the patentee acted as his own lexicographer. In other cases, the Plaintiffs seek to introduce as many additional words into the claims as possible, with the hope that the more lengthy and convoluted the claims are, the less likely it will be for the Court or the jury to understand the appropriate claim scope and compare it to the Plaintiffs' infringing system.

In the end, the claim terms at issue are simple words with easily understood meanings that the Plaintiffs only "dispute" their meaning because the accused systems infringe the asserted claims. The Court should recognize this claim construction strategy for what it is: an attempt to avoid liability by making claim construction arguments contrary to the plain and ordinary meanings of the terms and phrases at issue.

Dated: November 28, 2011

Respectfully submitted,

s/ Brett C. Govett
Brett C. Govett (Texas Bar No. 08235900)
Email: bgovett@fulbright.com
Karl G. Dial (Texas Bar No. 05800400)
Email: kdial@fulbright.com
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, TX 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200


s/ Carl J. Stich, Jr.
Carl J. Stich Jr. (Ohio # 0013300)
WHITE, GETGEY & MEYER CO. LPA
1700 Fourth and Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 241-3685
Fax: (513) 241-2399
*Trial Attorney for Defendant Excentus Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to S. D. Ohio Civ. R. 5.2(b), a true and correct copy of the foregoing pleading was served this 28th day of November, 2011 via the Court's ECF system upon all counsel of record that are registered ECF users.

s/ Brett C. Govett
Brett C. Govett

90556192.4