<table>
<tr><td colspan="2"><strong>IN THE UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF OHIO<br>WESTERN DIVISION AT CINCINNATI</strong></td></tr>
</table>

|  |  |  |
|---|---|---|
| THE KROGER CO., et al., | * | |
| | * | |
| | * | |
| Plaintiffs, | * | JUDGE SANDRA S. BECKWITH |
| | * | |
| vs. | * | |
| | * | CIVIL ACTION NO. 1:10-cv-00161-SSB |
| EXCENTUS CORPORATION, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | * | |

**PLAINTIFFS' ANSWER TO DEFENDANT'S SECOND AMENDED COUNTERCLAIMS**

For their Answer to the Second Amended Counterclaims of Defendant, Excentus Corporation ("Excentus"), filed on November 23, 2011, each of the Plaintiffs state as follows:

## PARTIES

1.    Excentus is a Corporation duly organized and existing under the laws of the State of Texas, having a principal of business at 14241 Dallas Parkway, Suite 1200, Dallas, Texas 75254.

**ANSWER:**    Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1, and therefore deny these allegations.

2.    Kroger is a corporation duly organized and existing under the laws of the State of Ohio, having a principal place of business at 1014 Vine Street, Cincinnati, Ohio 45202.

**ANSWER:**    Admitted.

3.     Excentus has no contact with the Kroger Subsidiaries.  Excentus, therefore, will assume for the sake of these counterclaims that the information regarding corporate structure and states of residence relating to each of these Kroger Subsidiaries contained in the Complaint is accurate.

**ANSWER:**    Plaintiffs admit that Excentus assumes that the information contained in the Complaint regarding the corporate structure and states of residence of each of the Kroger Subsidiaries is accurate.  Plaintiffs deny that Excentus has no contact with the Kroger Subsidiaries.

## JURISDICTION

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Excentus's counterclaims arise under the patent laws of the United States, including 35 U.S.C. § 271 et seq.  For the non-patent infringement counterclaims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds $75,000.00.  In the alternative, this Court has supplemental jurisdiction over the non-patent infringement counterclaims pursuant to 28 U.S.C. § 1367 because all the non-patent infringement counterclaims are so related to the patent infringement counterclaims that they form the same case or controversy under Article III of the United States Constitution.

**ANSWER:**    Plaintiffs admit that Excentus asserts counterclaims under the patent laws of the United States, including 35 U.S.C. § 271 et seq., but Plaintiffs deny any liability thereunder.  Plaintiffs admit that this Court has subject matter jurisdiction over actions arising under the patent laws of the United States under 28 U.S.C. §§ 1331 and 1338(a).  Plaintiffs are without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4, and therefore deny these allegations.

5.      This Court has personal jurisdiction over the Plaintiffs because the Plaintiffs have consented to personal jurisdiction in the State of Ohio by commencing this action in this judicial district.  Additionally, Plaintiffs do business in the State of Ohio and have established minimum contacts with the forum such that the exercise of jurisdiction over the Plaintiffs would not offend traditional notions of fair play and substantial justice.

**ANSWER:**    Plaintiffs admit that the Court has personal jurisdiction over them in this action because they consented to personal jurisdiction by commencing this action in this judicial district.  Plaintiffs admit that they either do business in Ohio or with an Ohio corporation but deny that each of them has sufficient contacts with the forum such that the exercise of jurisdiction over each of them for any action in this district, including actions unrelated to this lawsuit, would not offend traditional notions of fair play and substantial justice.

## VENUE

6.      The Plaintiffs have committed acts within this judicial district giving rise to this action and do business in this district, including offering for sale, making sales, and providing service to their respective customers in this district.  Acts of infringement and other tortious conduct have occurred in this district.  Venue for these counterclaims is proper in this district pursuant to 28 U.S.C. §§1391(a), (b) & (c) and 1400(b).

**ANSWER:**    Plaintiffs admit that venue for Excentus' counterclaims is proper in this district. Plaintiffs deny that they have committed acts within this judicial district or elsewhere giving rise to liability under the patent laws of the United States and deny that acts of infringement or other tortious conduct has occurred in this district or elsewhere.  Plaintiffs admit that they have done

business in this district but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6, and therefore deny these allegations.

**FACTS**

7.      Beginning in late 1996 and continuing until the filing of the patents, Randy Nicholson ("Nicholson") conceived of and worked continuously to develop the asserted claimed inventions in Abilene, Texas.  Nicholson is a long-time Abilene resident.  When Nicholson started his new business known as Auto-Gas Systems, Inc. ("Auto-Gas") in late 1986, he did so in Abilene.  Auto-Gas has been based in Abilene since its inception.

**ANSWER:**      Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7, and therefore deny these allegations.

8.      Long before fuel rewards were used as they are today, Nicholson conceived of the inventions, reduced them to practice and sought patents for them.  Nicholson is recognized as a pioneer of many aspects of the retail fuel industry including innovations such as unattended fuel sites for commercial fleets, pay-at-the-pump technology for which he was recognized by USA Today, and providing fuel rewards to customers (which he patented).  In order to put his patents to work, Nicholson used Auto-Gas, Centego, L.L.C. ("Centego"), and a marketing agreement with Metrosplash Systems Group ("Metrosplash") (collectively "the Nicholson Companies"). The Nicholson Companies successfully implemented the patents in their business and by way of Auto-Gas licensing the patents to third parties.

**ANSWER:**      Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore deny these allegations.

9.      In addition to owning the patents, Auto-Gas expended great effort and funds to create and develop highly technical computerized systems, trade secrets, products and programs

and confidential information to empower retailers with a way of providing rewards to their

customers in the form of gasoline discounts.  The Auto-Gas systems, trade secrets, and

confidential information involved virtually every aspect of its fuel rewards products and business,

including but not limited to:  (a) all of Auto-Gas' business methodologies and technical details of

its fuel rewards program, (b) plans and potential opportunities to provide fuel rewards

technology and services to customers, (c) information regarding how retailers could develop fuel

rewards programs and products, (d) information regarding how to process and accumulate

rewards for reduced prices for gasoline, (e) information regarding suppliers for the products and

business, (f) information regarding how retailers' promotional items and sales made during

different visits to a store could be used and encouraged with fuel credits, (g) information

regarding how each customer's rewards information could be accessed, stored, identified and

retrieved for gasoline discounts, (h) information regarding how limitations could be placed on

such rewards, (i) information regarding how a retailer could allow the rewards to be used at

gasoline pumps, (j) Auto-Gas' summaries of its programs and products, (k) Auto-Gas' software,

source code, schema, logic and business methods, and (l) other confidential information which

gave Auto-Gas an opportunity to obtain an advantage over competitors who did not know or use

such information (collectively, the "Auto-Gas Trade Secrets").

**ANSWER:**    Plaintiffs are without knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 9, and therefore deny these allegations.

10.    Excentus also is a pioneer in the fuel rewards industry.  Excentus was started in

1996 for the purpose of developing fuel marketing technology and services for retailers and

commercial fleet operators.  Today, Excentus is the market leader in providing such technology

and services, including its own fuel rewards program, to numerous retailers in the United States.

It was this technology and services, among other things, that Excentus offered to Kroger at various points in their commercial relationship.

**ANSWER:**    Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and therefore deny these allegations.

11.    In September 2008, Excentus acquired Centego which held certain Auto-Gas intellectual property, Nicholson joined the Board of Excentus, and Auto-Gas became a shareholder of Excentus.  Excentus also acquired most of Nicholson's software, systems, trademarks, customers, business operations, the Auto-Gas Trade Secrets, and confidential business or technical information related to the Auto-Gas fuel reward products and services, as well as Auto-Gas' causes of action for prior misappropriation of the Auto-Gas Trade Secrets and common law misappropriation.

**ANSWER:**    Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and therefore deny these allegations.

12.    In addition to owning the Auto-Gas patents, Excentus previously had expended and continues to expend great effort and funds to create and develop highly technical and market-specific software and computer systems to provide retailers with a way of developing highly effective rewards programs and providing rewards to their customers in the form of gasoline discounts in a cost-effective and timely manner.  The Excentus systems, trade secrets, products and programs and confidential information involved virtually every aspect of its fuel rewards products and business, including but not limited to:  (a) all of Excentus' business methodologies and technical details of its fuel rewards program, (b) plans and potential opportunities to provide fuel rewards technology and services to customers, retailers, and consumers reaching tens of millions of consumers to create tremendous value, (c) information

regarding how retailers could develop fuel rewards programs and products and how specifically to integrate and enable non-fuel-specific retail systems to support fuel rewards programs, (d) information regarding how to collect and maintain customer account information and manage the accumulation, redemption and settlement of fuel rewards for such customer accounts, (e) information regarding how retailers can develop fuel rewards programs that fit their specific business and marketing resources and plans utilizing Excentus' software to leverage and integrate their existing systems and equipment with other systems (with and without Excentus's systems) to minimize costs and time to market as well as to measure and improve their results, (f) information regarding suppliers for the products and business, (g) information regarding how retailers can operate and promote their fuel rewards programs and provide rewards for item-specific purchases, department-specific purchases or total purchases or any combination thereof and the instant redemption of fuel rewards at the gas pump when customers purchase fuel at participating fuel locations, (h) information regarding how limitations could be placed on such rewards, (i) information regarding how a retailer could allow the rewards to be used at gasoline pumps, (j) Excentus' summaries of its programs and products, (k) information regarding how retailers can network different fuel and non-fuel retailers together to cross-market fuel rewards to increase their desired program benefits, (l) Excentus' software, source code, schema, logic and business methods, and (m) other confidential information which gave Excentus an opportunity to obtain an advantage over competitors who did not know or use such information (collectively, the "Excentus Trade Secrets").

**ANSWER:**    Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and therefore deny these allegations.

13.     The acquisition by Excentus of Auto-Gas' patents and the Auto-Gas Trade Secrets has aligned the critical patents in the fuel rewards industry with the market leader in the industry and has combined the Excentus Trade Secrets with the Auto-Gas Trade Secrets (collectively, the "Trade Secrets") regarding how retailers can provide rewards to their customers in the form of gasoline discounts in the most efficient and effective manner.  It also has allowed Excentus to determine that Kroger has engaged in the wrongdoing as alleged in these counterclaims.

**ANSWER:**     Plaintiffs deny that Kroger has engaged in any wrongdoing.  Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 13, and therefore deny these allegations.

### THE AUTO-GAS RELATIONSHIP WITH KROGER

14.     The Auto-Gas relationship with Kroger began in 2000.  Off and on from 2000 through 2008, when Excentus acquired the patents in-suit, Kroger engaged in discussions with Centego, a subsidiary of Auto-Gas, to both license the patents and learn the Auto-Gas Trade Secrets, products and programs, and confidential information of the fuel rewards business during numerous discussions.  During this time, Kroger obtained, on a confidential basis, the Auto-Gas Trade Secrets, products and programs, and confidential information of Auto-Gas at issue in this civil action, including proprietary pricing information and competitive information relating to actual or potential licensees of the technology at issue.

**ANSWER:**  Plaintiffs admit that Kroger engaged in discussions with Auto-Gas in the past relating to the patents-in-suit.  Plaintiffs deny the remaining allegations of paragraph 14.

## THE EXCENTUS RELATIONSHIP WITH KROGER

15.     The Excentus relationship with Kroger is similar.  Excentus first provided the

Excentus Trade Secrets, products and programs and confidential information to Kroger in 2006

and continued until 2009.  Upon Excentus's acquisition of the patents in suit, Kroger contacted

Excentus to continue discussions it was having at the time of the acquisition with Centego to

license the patents.  Subsequently, Kroger began making large monthly payments to Excentus

while deal terms were being discussed.  During those discussions, Kroger offered to license the

patents in suit for a substantial sum.  After Excentus resolved its issues with Safeway, Inc. in

2010, Kroger again contacted Excentus to secure a license.  Only when it became apparent that

Kroger was infringing the patents in suit, wrongfully using the Trade Secrets, products and

programs and confidential information, and was not willing to pay Excentus fair value for

intentional and knowing use of the patents and trade secrets was the present suit filed.

**ANSWER:**     Plaintiffs admit that Kroger engaged in discussions with Excentus in the past and

made monthly payments to Excentus while deal terms were being discussed.  Plaintiffs are

without knowledge or information sufficient to form a belief as to the truth of the allegations that

Excentus resolved its issues with Safeway in 2010 and therefore denies these allegations.

Plaintiffs deny the remaining allegations of paragraph 15.

## INFRINGEMENT OF U.S. PATENT NO. 6,321,984

16.     On November 27, 2001, United States Patent No. 6,321,984 ("the '984 Patent")

was duly and legally issued for an invention entitled "Adjustable price fuel dispensing system."

A copy of the '984 Patent is attached as Exhibit A.

**ANSWER:**     Plaintiffs admit that U.S. Patent No. 6,321,984 ("the '984 patent") states on its

cover page that it is entitled "Adjustable price fuel dispensing system" and that it was issued on

November 27, 2001. Plaintiffs deny that the '984 patent was duly and/or legally issued. Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 16, and therefore deny these allegations.

17. The '984 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '984 Patent.

**ANSWER:** Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore deny these allegations.

18. The Plaintiffs have engaged and are engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement and/or induced infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '984 Patent, including but not limited to the Kroger Fuel program directly and/or indirectly infringing at least claims 1, 5, 8 and 14-15 of the '984 Patent.

**ANSWER:** Plaintiffs deny the allegations of paragraph 18.

19. The acts of infringement by the Plaintffs have caused damages to Excentus, and Excentus is entitled to recover from the Plaintiffs the damages sustained by Excentus as a result of their wrongful acts in an amount subject to proof at trial. The Plaintiffs' infringement of Excentus's exclusive rights under the '984 Patent will continue to damage Excentus's business, causing irreparable harm (including loss of market share), for which there is no adequate remedy at law, unless it is enjoined by this Court. Kroger continues to wrongfully profit from activities that infringe the '984 Patent.

**ANSWER:** Plaintiffs deny the allegations of paragraph 19.

20.     Furthermore, the infringements of the '984 Patent by the Plaintiffs are willful and deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**     Plaintiffs deny the allegations of paragraph 20.

### INFRINGEMENT OF U.S. PATENT NO. 6,332,128

21.     On December 18, 2001, United States Patent No. 6,332,128 ("the '128 Patent") was duly and legally issued for an invention entitled "System and method of providing multiple level discounts on cross-marketed products and discounting a price-per-unit-volume of gasoline."  A copy of the '128 Patent is attached as Exhibit B.

**ANSWER:**  Plaintiffs admit that U.S. Patent No. 6,332,128 ("the '128 patent") states on its cover page that it is entitled "System and method of providing multiple level discounts on cross-marketed products and discounting a price-per-unit-volume of gasoline" and that it was issued on December 18, 2001.  Plaintiffs deny that the '128 patent was duly and/or legally issued. Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 21, and therefore deny these allegations.

22.     The '128 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '128 Patent.

**ANSWER:**     Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22, and therefore deny these allegations.

23.     The Plaintiffs have engaged and are engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement and/or induced infringement, literally and/or under the doctrine of equivalents, of

one or more claims of the '128 Patent, including but not limited to the Kroger Fuel program

directly and/or indirectly infringing at least claims 1-4 and 20-23 of the '128 Patent.

**ANSWER:**    Plaintiffs deny the allegations of paragraph 23.

24.    The acts of infringement by the Plaintiffs have caused damages to Excentus, and

Excentus is entitled to recover from the Plaintiffs the damages sustained by Excentus as a result

of its wrongful acts in an amount subject to proof at trial.  The Plaintiffs' infringement of

Excentus's exclusive rights under the '128 Patent will continue to damage Excentus's business,

causing irreparable harm (including loss of market share), for which there is no adequate remedy

at law, unless it is enjoined by this Court.  Kroger continues to wrongfully profit from activities

that infringe the '128 Patent.

**ANSWER:**    Plaintiffs deny the allegations of paragraph 24.

25.    Furthermore, the infringements of the '128 Patent by the Plaintiffs are willful and

deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees

and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**    Plaintiffs deny the allegations of paragraph 25.

## INFRINGEMENT OF U.S. PATENT NO. 7,383,204

26.    On June 3, 2008, United States Patent No. 7,383,204 ("the '204 Patent") was duly

and legally issued for an invention entitled "System and method to provide customer incentive to

provide non-fuel products and services."  A copy of the '204 Patent is attached as Exhibit D.

**ANSWER:**    Plaintiffs admit that U.S. Patent No. 7,383,204 ("the '204 Patent") states on its

cover page that it was issued on June 3, 2008.  Plaintiffs deny that the '204 Patent is entitled

"System and method to provide customer incentive to provide non-fuel products and services."

Plaintiffs deny that the '204 patent was duly and/or legally issued.  Plaintiffs are without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 26, and therefore deny these allegations.

27.  The '204 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '204 Patent.

**ANSWER:**  Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27, and therefore deny these allegations.

28.  The Plaintiffs have engaged and are engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement and/or induced infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '204 Patent, including but not limited to the Kroger Fuel program directly and/or indirectly infringing at least claims 1-3, 5-9, 12, and 13 of the '204 Patent.

**ANSWER:**  Plaintiffs deny the allegations of paragraph 28.

29.  The acts of infringement by the Plaintiffs have caused damages to Excentus, and Excentus is entitled to recover from the Plaintiffs the damages sustained by Excentus as a result of its wrongful acts in an amount subject to proof at trial.  The Plaintiffs' infringement of Excentus's exclusive rights under the '204 Patent will continue to damage Excentus's business, causing irreparable harm (including loss of market share), for which there is no adequate remedy at law, unless it is enjoined by this Court.  Kroger continues to wrongfully profit from activities that infringe the '204 Patent.

**ANSWER:**  Plaintiffs deny the allegations of paragraph 29.

30.  Furthermore, the infringements of the '204 Patent by the Plaintiffs are willful and deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**     Plaintiffs deny the allegations of paragraph 30.

## INFRINGEMENT OF U.S. PATENT NO. 7,742,942

31.     On June 22, 2010, Unites States Patent No. 7,742,942 ("the '942 Patent") was duly and legally issued for an invention entitled "System and method for discounting fuel."  A copy of the '942 Patent is attached as Exhibit E.

**ANSWER:**     Plaintiffs admit that U.S. Patent No. 7,742,942 ("the '942 Patent") states on its cover page that it is entitled "System and method for discounting fuel" and that it was issued on June 22, 2010.  Plaintiffs deny that the '942 patent was duly and/or legally issued.  Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 31, and therefore deny these allegations.

32.     The '942 Patent was assigned to Excentus, and Excentus holds all rights and interests in the '942 Patent.

**ANSWER:**     Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32, and therefore deny these allegations.

33.     The Plaintiffs have engaged in and are engaging in unauthorized conduct and activities that violate 35 U.S.C. § 271 et seq., constituting direct infringement, contributory infringement, and/or induced infringement, literally and/or under the doctrine of equivalents, of one or more claims of the '942 Patent, including but not limited to the Kroger Fuel program directly and/or indirectly infringing at least claims 1, 4, 9, 10, and 15 of the '942 Patent.

**ANSWER:**     Plaintiffs deny the allegations of paragraph 33.

34.     The acts of infringement by the Plaintiffs have caused damages to Excentus, and Excentus is entitled to recover from the Plaintiffs the damages sustained by Excentus as a result of its wrongful acts in an amount subject to proof at trial.  The Plaintiffs' infringement of

Excentus's exclusive rights under the '942 Patent will continue to damage Excentus's business, causing irreparable harm (including loss of market share), for which there is no adequate remedy at law, unless it is enjoined by this Court. Kroger continues to wrongfully profit from activities that infringe the '942 Patent.

**ANSWER:**    Plaintiffs deny the allegations of paragraph 34.

35.    Furthermore, the infringements of the '942 Patent by the Plaintiffs are willful and deliberate, entitling Excentus to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**ANSWER:**    Plaintiffs deny the allegations of paragraph 35.

## TRADE SECRET MISAPPROPRIATION

36.    Kroger has knowingly and intentionally misappropriated the Trade Secrets disclosed to it in confidence by Excentus and Auto-Gas. Excentus was assigned all of the Auto-Gas Trade Secrets and causes of action for misappropriation of such Auto-Gas Trade Secrets, so Excentus now owns all the Trade Secrets at issue in this claim.

**ANSWER:**    Plaintiffs deny that Kroger has misappropriated any trade secrets. Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 36, and therefore deny these allegations.

37.    Such Trade Secrets have independent economic value. They required substantial time, effort and funds to develop, revise, and complete into the Trade Secrets that Kroger misappropriated. Competitors would benefit from knowing the Trade Secrets information, and Excentus and Auto-Gas exercised reasonable diligence in maintaining the secrecy and confidentiality of the Trade Secrets. Kroger has unlawfully used these Trade Secrets, including filing and obtaining an issued patent using Excentus's trade secret information.

**ANSWER:**     Plaintiffs deny that Kroger has misappropriated any trade secrets.  Plaintiffs deny that Kroger has unlawfully used any trade secrets.  Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 37, and therefore deny these allegations.

38.     The use or disclosure of the Trade Secrets has resulted in damage to Excentus and a benefit including improper profits to Kroger.  Excentus sues for its actual and exemplary damages as a result of this misappropriation of the Trade Secrets by Kroger.  Because Kroger's conduct constitutes a violation of Texas Penal Code §31.05 (theft of trade secrets), there is no limit on such exemplary damages.  In addition, Excentus is entitled to injunctive relief preventing Kroger from using the Trade Secrets.

**ANSWER:**     Plaintiffs admit that Excentus purports to sue for actual and exemplary damages.  Plaintiffs deny the remaining allegations of paragraph 38.

## COMMON LAW MISAPPROPRIATION

39.     Both Excentus and Auto-Gas created successful fuel rewards products and programs through extensive time, labor, skill, and money.  Excentus acquired the Auto-Gas fuel rewards products and programs, technology, and confidential information, and Excentus now owns such technology, confidential information and the cause of action for prior common law misappropriation.

**ANSWER:**     Plaintiffs are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39, and therefore deny these allegations.

40.     Kroger has used Excentus' products and programs (including those acquired from Auto-Gas) in competition with Excentus and Auto-Gas, thereby gaining a special advantage or free ride because Kroger has not borne any of the expense incurred by Excentus and Auto-Gas.

This conduct by Kroger constitutes common law misappropriation, has caused damage to Excentus, and has resulted in improper profits to Kroger.  These undeserved profits further caused Excentus an exponential loss of revenue associated with an agreement entered into between Kroger and Shell Oil Company.  The Kroger Agreement with Shell has caused, and currently is causing, extensive damage to Excentus.

**ANSWER:**   Plaintiffs deny the allegations of paragraph 40.

41.    Excentus sues for its actual and exemplary damages as a result of this common law misappropriation by Kroger.  In addition, Excentus is entitled to injunctive relief preventing Kroger from using the products and programs obtained from Excentus and Auto-Gas.

**ANSWER:**   Plaintiffs admit that Excentus purports to sue for actual and exemplary damages. Plaintiffs deny the remaining allegations of paragraph 41.

## IMPOSITION OF A CONSTRUCTIVE TRUST

42.    The above-described patent infringement, misappropriation of trade secrets, common law misappropriation, and other wrongful conduct by Kroger has proximately caused damages to Excentus.  At the same time, such wrongful conduct has directly and unjustly benefited Kroger insofar as the wrongful conduct described above has led to the creation, existence, viability, and success of the competing Kroger program, which was not independently created.  It came into existence only after Kroger learned everything needed from the Trade Secrets, the misappropriated products and programs and confidential information, and the patents.  Without the wrongfully acquired information, the competing Kroger program simply could not have been created in the time frame and manner in which it was implemented.  The competing Kroger program can be traced to this wrongfully acquired information.

**ANSWER:**   Plaintiffs deny the allegations of paragraph 42.

43.     Excentus is therefore entitled to have the Court impose a constructive trust on the competing Kroger program and all monies, benefit, goodwill, and assets related to it.  The competing Kroger program was built on the Trade Secrets, products and programs, patents, confidential information and know how wrongfully misappropriated from Excentus and Auto-Gas.  Kroger would be unjustly enriched if allowed to retain its competing program and the benefits derived from it.  Excentus is entitled to all the benefits accruing to Kroger from such misappropriation.

**ANSWER:**     Plaintiffs deny the allegations of paragraph 43.

### UNFAIR COMPETITION

44.     Kroger's actions described herein constitute business conduct that is contrary to honest practice in industrial or commercial matters.

**ANSWER:**     Plaintiffs deny the allegations of paragraph 44.

45.     Kroger gained an unfair advantage in the market by capitalizing on Excentus's efforts and success in its fuel reward systems by infringing its patents and gaining access to Excentus's Trade Secrets and other proprietary and confidential information and then using these for Kroger's benefit and against Excentus in the marketplace, which are acts that constitute unfair competition under Texas Law.

**ANSWER:**     Plaintiffs deny the allegations of paragraph 45.

46.     Kroger's acts were willful and in bad faith and Kroger has continued to infringe Excentus's patents and use Excentus's Trade Secrets and confidential and proprietary information against Excentus and will continue to do so, gaining an unfair advantage in the market by these

acts of unfair competition.  Excentus is entitled to injunctive relief, actual damages, and punitive damages as a result of these acts of unfair competition.

**ANSWER:**     Plaintiffs deny the allegations of paragraph 46.

## PRAYER

WHEREFORE, Excentus respectfully prays that upon final trial a judgment be entered and that the following relief be granted.

(1)     For judgment that the '984 Patent is valid and has been and will continue to be infringed by Plaintiffs;

(2)     For judgment that the '128 Patent is valid and has been and will continue to be infringed by Plaintiffs;

(3)     For judgment that the '204 Patent is valid and has been and will continue to be infringed by Plaintiffs;

(4)     For judgment that the '942 Patent is valid and has been and will continue to be infringed by Plaintiffs;

(5)     For an accounting of all damages sustained by Excentus as a result of the acts of infringement by Plaintiffs;

(6)     For preliminary and permanent injunctions enjoining the aforesaid acts of infringement by Plaintiffs, their officers, agents, servants, employees, subsidiaries and attorneys, and those persons acting in concert with them, including related individuals and entities, customers, representatives, dealers, and distributors;

(7)     For actual damages together with prejudgment interest against Plaintiffs;

(8)     For enhanced damages pursuant to 35 U.S.C. § 284 against Plaintiffs;

(9)     For an award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law against Plaintiffs;

(10)    For preliminary and permanent injunctions enjoining Plaintiffs, its officers, agents, servants, employees, subsidiaries and attorneys, and those persons acting in cooperation with Plaintiffs, including related individuals and entities, customers, representatives, dealers, and distributors, from using the Trade Secrets and/or products and programs and confidential information in any way and from continuing to operate the infringing Kroger program;

(11)    For exemplary damages against Plaintiffs;

(12)    For all costs of suit, prejudgment and post-judgment interest as allowed by law;

(13)    For a constructive trust to be imposed as set forth above on the competing Kroger program and all benefits flowing from it; and

(14)    For such other and further relief as the Court may deem just and proper.

**ANSWER:**    Plaintiffs deny that Excentus is entitled to any of the relief sought in the prayer or any relief whatsoever.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Excentus Corporation demands a trial by jury on its counterclaims.

**ANSWER:**    Plaintiffs admit that Excentus has requested a trial by jury on its counterclaims.

Further responding to the Counterclaims by Excentus, Plaintiffs allege as follows:

## AFFIRMATIVE DEFENSES

Plaintiffs assert the following affirmative defenses and reserve the right to amend their answer as additional information becomes available:

## FIRST DEFENSE

47.    The Counterclaims by Excentus fail to state a claim upon which relief can be granted.

## SECOND DEFENSE

48.    Plaintiffs do not infringe and have not infringed, either directly, contributorily, or by inducement, any claim of the '984 Patent, the '128 Patent, the '204 Patent and/or the '942 Patent, either literally or under the doctrine of equivalents.

## THIRD DEFENSE

49.    For at least the reasons set forth in Claim II of Plaintiffs' First Amended Complaint, one or more claims of the '984 Patent are invalid and unenforceable for inequitable

conduct and for failure to comply with one or more provisions of the patent laws and regulations of the United States including, without limitation, 35 U.S.C. §§ 102, 103, 111, 112, 116 and 256.

## FOURTH DEFENSE

50.     For at least the reasons set forth in Claim IV of Plaintiffs' First Amended Complaint, one or more claims of the '128 Patent are invalid and unenforceable for inequitable conduct and for failure to comply with one or more provisions of the patent laws and regulations of the United States including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

## FIFTH DEFENSE

51.     One or more claims of the '204 Patent are invalid and unenforceable for inequitable conduct and for failure to comply with one or more provisions of the patent laws and regulations of the United States including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112 at least because (i) one or more claims, including at least claim 1, are directed to abstract ideas and non-statutory subject matter, (ii) one or more claims, including at least claim 1, are anticipated or at least rendered obvious by one or more prior art patents and publications that, either alone or in combination, teach every limitation of the claim including U.S. Pat. No. 5,173,851 and WO-91/18373 and (iii) one or more claims, including at least claim 7, are indefinite, recite unsupported means-plus-function limitations, and are unsupported by an enabling written description in the specification and drawings of the '204 Patent.

## SIXTH DEFENSE

52.     One or more claims of the '942 Patent are invalid and unenforceable for inequitable conduct and for failure to comply with one or more provisions of the patent laws and regulations of the United States including, without limitation, 35 U.S.C. §§ 102, 103, and 112 at least because (i) one or more claims, including independent claim 1, are anticipated or at least rendered obvious by one or more prior art patents and publications that, either alone or in

combination, teach every limitation of the claim including Hisey, "Storming the Store Card Gates," July 1997, U.S. Pat. No. 6,741,968, and U.S. Pat. No. 6,321,984, and (ii) one or more claims, including at least claim 9, are indefinite, recite unsupported means-plus-function limitations, and are unsupported by an enabling written description in the specification and drawings of the '942 Patent.

## SEVENTH DEFENSE

53.     To the extent Excentus seeks damages for alleged infringement more than six years prior to the filing of Excentus' counterclaims, such claims are barred by 35 U.S.C. § 286.

## EIGHTH DEFENSE

54.     Any claim for damages for infringement of the patents-in-suit is limited by 35 U.S.C. § 287 to those damages occurring after notice of infringement.

## NINTH DEFENSE

55.     To the extent that Excentus purports to plead claims for alleged trade secret misappropriation, common law misappropriation, imposition of a constructive trust, and unfair competition, Excentus' claims are barred by the respective applicable statutes of limitations.

## TENTH DEFENSE

56.     Excentus' claims for trade secret misappropriation, common law misappropriation, imposition of a constructive trust, and unfair competition fail to state a claim upon which relief can be granted.

## ELEVENTH DEFENSE

57.     Excentus' claims for trade secret misappropriation, common law misappropriation, imposition of a constructive trust, and unfair competition, are barred because Excentus lacks standing to bring these claims.

## TWELFTH DEFENSE

58.     Excentus' claims for trade secret misappropriation, common law

misappropriation, imposition of a constructive trust, and unfair competition are preempted by

statute and barred by the doctrine of preemption.

## THIRTEENTH DEFENSE

59.     Excentus' claims for infringement of the patents-in-suit are barred by the doctrine

of unclean hands.

## FORTEENTH DEFENSE

60.     Plaintiffs reserve all affirmative defenses under Rule 8(c) of the Federal Rules of

Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in

equity, that may now exist or in the future be available based on discovery or further factual

investigation in this case.

Respectfully submitted,


/s/*Jeffrey C. Metzcar*
Jeffrey C. Metzcar (0072648)
Email:  Jeff.Metzcar@ThompsonHine.com
THOMPSON HINE LLP
2000 Courthouse Plaza, N.E.
10 West Second Street
Dayton, Ohio 45402
Phone:  (937) 443-6841
Fax:  (937) 443-6635

Stephen J. Butler (0010401), Trial Attorney
Email:  Steve.Butler@ThompsonHine.com
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone:  (513) 352-6700
Fax:  (513) 241-4771

Trial Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all parties and counsel of record via the Court's ECF system on this 7th day of December, 2011

/s/*Jeffrey C. Metzcar*
Jeffrey C. Metzcar

678762.1