**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

THE KROGER COMPANY, et al.        CASE NO.  1:10cv161

        Plaintiffs

     -vs-                Judge Michael R. Barrett

EXCENTUS CORPORATION

        Defendant

**OPINION AND ORDER**

Plaintiff Kroger Company ("Kroger") and its subsidiaries filed a second amended complaint (Doc. No. 71) for a declaratory judgment that it has not infringed a number of patents held by Defendant Excentus Corporation ("Excentus"). Kroger also seeks a declaratory judgment that certain of the patents are invalid and/or unenforceable. Excentus filed a third amended answer (Doc. No. 78) and asserted counterclaims for infringement of four of the patents-in-suit, as well as claims for trademark infringement, misappropriation of trade secrets, unfair competition, and imposition of a constructive trust. Generally speaking, the patents-in-suit claim methods related to fuel discount rewards programs.

Pursuant to the Court's pre-trial order, the parties exchanged the claim terms that are in dispute and submitted nine claims or claim terms to the Court for construction. The parties filed claim construction briefs (Doc. Nos. 50, 58, 65). On March 27, 2012, the Court held a hearing pursuant to *Markman v. Westview Instruments., Inc.*, 517 U.S. 370 (1996), during which counsel for the parties presented arguments in support of their respective

1

construction of the claims at issue.  However, this matter was subsequently reassigned to the undersigned.  (Doc. 98.)  On June 25, 2012, a new *Markman* Hearing was held.  (Doc. 100.)  The parties were permitted to supplement the record.  (Docs. 101, 102.)

I. <u>The Patents at Issue</u>

A. <u>The '984 Patent</u>

U.S. Patent 6,321,984, entitled "ADJUSTABLE PRICE FUEL DISPENSING SYSTEM" ("the '984 Patent") (Doc. No. 45-2), issued November 27, 2001.  The abstract describes the claimed method as "[a]n integrated customer reward processing system and fuel dispensing apparatus to allow a retailer to authorize fuel to be dispensed at a discounted unit price in accordance with a customer's achievement of predefined purchasing criteria."  The method provides a data processing system that maintains a customer's purchases at an associated store and compares them to predetermined criteria to determine when a fuel discount is to be provided.  When the customer meets the purchasing criteria, the system authorizes a fuel discount and provides a mechanism to the customer to obtain fuel at the discounted price.  *See generally* U.S. Patent No. 6,321,984, Abstract.

B. <u>The '128 Patent</u>

U.S. Patent 6,332,128, entitled "SYSTEM AND METHOD OF PROVIDING MULTIPLE LEVEL DISCOUNTS ON CROSS-MARKETED PRODUCTS AND DISCOUNTING A PRICE-PER-UNIT VOLUME OF GASOLINE" ("the '128 Patent") (Doc. No. 45-4), issued December 18, 2001.  The Abstract describes the claimed method as "providing multiple level, price-per-unit ("PPU") discounts on gasoline to a customer who purchases at least one cross-marketed product."  According to the Abstract, pursuant to

2

the method, a customer will be provided a PPU discount on gasoline based on a purchase of a first cross-marketed product and a second PPU discount on gasoline based on the purchase of a second cross-marketed product. The first and second discounts are added together to determine a total PPU discount. The total discount is stored in a database and the customer may redeem the discount by scanning a receipt with a bar code scanner at a gasoline dispenser. When the customer completes the gasoline purchase, the value of the discount redeemed is determined and stored in a discounts redeemed database. Portions of the discount redeemed are then allocated to vendors of the first and second cross-marketed products.

C. The '204 Patent

U.S. Patent 7,383,204, entitled "SYSTEM AND METHOD PROVIDING CUSTOMER INCENTIVE TO PURCHASE NON-FUEL PRODUCTS AND SERVICES" ("the 204 Patent") (Doc. No. 45-8), issued June 3, 2008. The Abstract of the '204 Patent describes the claimed method as "[a] system and computer implemented method of providing an incentive for a customer to purchase non-fuel products and services or fuel." The system detects when the customer has purchased non-fuel products and services on a first visit to a store, and provides a reward entitling the customer to a first amount of free fuel. The system also detects when the customer has purchased non-fuel products or services during a second visit to the store and provides the customer with a second reward entitling the customer to a second amount of free fuel. The system identifies the customer during a subsequent fueling transaction and provides an amount of free fuel equal to the total of the first and second amounts of free fuel.

3

D. The '942 Patent

U.S. Patent 7,742,942, entitled "SYSTEM AND METHOD FOR DISCOUNTING FUEL" ("the '942 Patent") (Doc. No. 45-10), issued June 22, 2010. The Abstract of the '942 Patent describes the claimed method as "[a] system and method of discounting a price-per-unit (PPU) of fuel during a fueling transaction by a customer at a fuel merchant." The claimed method has two aspects. In the first aspect, the method identifies the issuer of the customer's credit card and provides a PPU discount associated with the issuer of the card. In the second aspect, the invention identifies whether the customer participates in a reward program with a vendor who has an agreement with the fuel merchant to provide PPU discounts for fuel in exchange for reward points redeemed in the reward program. The customer's points are converted to a PPU discount and fuel is discounted accordingly.

II. The Claims at Issue

The following claims are at issue here: independent claims 1 and 14 of the '984 Patent, independent claims 1 and 20 of the '128 Patent, independent claims 1 and 7 of the '204 Patent, and independent claims 1 and 9 of the '942 Patent. The Court quotes below the language of the claims at issue with the terms which require construction by the Court set forth in bold face type.

A. The '984 Patent

Independent claim 1 of the '984 Patent reads:

A system for dispensing fuel, comprising:

a nozzle for dispensing the fuel;

a controller in communication with the nozzle for selectively causing the nozzle to dispense the fuel at a discounted unit price;

4

a reader connected to the controller for reading data provided by a user and transferring the data to the controller; and

a database for creating and maintaining **a record associated with purchases made by the user, the record including the users** [sic] **achievement of a purchasing criteria;**

whereby upon receipt of the data, the controller accesses said record and causes the nozzle to dispense the fuel at the discounted unit price associated with the users [sic] achievement of the purchasing criteria.

'984 Patent, Col. 12, ll. 30-47. Independent claim 14 contains the highlighted term language as well. *Id.*, col. 14, ll.11-14.

## B. The '128 Patent

Independent claim 1 of the '128 Patent reads:

A method of providing multiple level discounts on a price-per-unit (PPU) of a consumable good sold in multiple units to a customer who purchases a plurality of cross-marketed products, said method comprising the steps of:

awarding a first discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a first cross-marketed product;

**awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product;**

adding the first discount to the second discount to determine a total discount on the PPU of the consumable good; and

awarding the total discount to the customer.

'128 Patent, col. 8, ll. 58-67, col. 9, ll.1-4. Additionally, the term "discount," which appears in all of the claims of the '128 Patent, is at issue.

## C. The '204 Patent

Independent claim 1 of the '204 Patent reads:

A computer-implemented method of providing an incentive for a customer to purchase non-fuel products or services at a store that sells the products or services and fuel, said method comprising:

detecting that the customer purchased a number of non-fuel products or services in a first visit to the store;

providing the customer with a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel products or services in the first visit;

detecting that the customer purchased a number of non-fuel products or services in a second visit to the store;

providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit;

identifying the customer during a subsequent fueling transaction; and

**dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel.**

'204 Patent, col. 13, ll.37-57.

Independent claim 7 of the '204 Patent is similar to independent claim 1 but is expressed as a means-plus-function claim and reads:

A system for providing an incentive for a customer to purchase non-fuel products or services at a store that sells the products or services and fuel, said system comprising:

means for detecting that the customer purchased a number of non-fuel products or services in a first visit to the store, and that the customer purchased a number of non-fuel products or services in a second visit to the store;

**means for providing the customer with a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel products or services in the first visit, and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit;**

6

means for identifying the customer during a subsequent fueling transaction; and

means for dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel.

*Id.*, col. 14, ll. 24-43.

## D. The '942 Patent

Independent claim 1 of the '942 Patent reads:

A computer-implemented method of discounting a price-per-unit (PPU) of fuel at a fuel merchant and **increasing customer use of third-party financial cards issued by a plurality of third-party issuers,** wherein the third-party financial cards are selected from a group consisting of credit cards and debit cards, said method comprising:

storing in a database, a PPU discount associated with one of [sic] third-party issuers, wherein the PPU discount is defined in affinity-type agreements between a fuel merchant and third-party issuers;

reading a customer's financial card number to begin a fueling transaction at the fuel merchant, wherein said financial card is available for use by said customer at a plurality of non-affiliated merchant locations;

identifying the third-party issuer of the financial card by analyzing the financial card number, each issuer having a PPU discount individually associated therewith;

**associating the identified third party issuer of the financial card with the stored PPU discount for the fuel;**

discounting a PPU of the fuel posted on the fuel dispenser by an amount equal to the PPU discount associated with the identified issuer of the financial card;

dispensing a number of units of fuel to the customer at the discounted PPU;

calculating a redeemed discount by multiplying the dispensed number of units of fuel by the PPU discount associated with the identified third-party issuer of the credit card; and

7

> allocating the redeemed discount between the third-party issuer of the financial card and the fuel merchant wherein said reading, identifying, associating and calculating are performed by a computing device.

'204 Patent, col. 6, ll.49-67, col. 7, ll. 1-13.   Somewhat similar to independent claim 1, the preamble to independent claim 9 reads:

> A system for discounting a price-per-unit (PPU) of fuel at a fuel merchant and **increasing customer use of a third-party financial card issued by a third-party issuer,** wherein the third-party financial card is selected from a group consisting of different issuers of credit cards, said system comprising:

*Id.*, col. 7, ll. 56-67.

### III. Claim Construction Principles

In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Federal Circuit Court of Appeals reiterated for the district courts the proper procedure and standards that guide patent claim construction.  The main points of *Phillips* may be summarized as follows:

1.  the words of a claim are generally given their ordinary and customary meaning, as understood by a person of ordinary skill in the art as of the filing date of the patent application.  *Id.* at 1312-13.

2.  the claims themselves provide substantial guidance as to the meaning of particular claim terms. *Id.* at 1314.

3.  the claims must be read in view of the specification; however, the court must not import  limitations from the specification into the claims. *Id.* at 1315, 1320, 1323.

4.  if part of the record, the court may consider the patent's prosecution history to ascertain how  the inventor understood the invention and whether he narrowed the scope of the invention during prosecution.  *Id.* at 1317.

5.  the court may consider extrinsic evidence, such as treatises and dictionaries, but extrinsic evidence is less significant than the intrinsic record in determining the meaning of the claim language.  *Id.*

V. The Court's Construction of the Claims

A. The '984 Patent

| '984 Patent | Excentus Corp. | Kroger Co. | The Court |
|---|---|---|---|
| 1. A system for dispensing fuel, comprising:<br><br>a nozzle for dispensing the fuel;<br><br>a controller in communication with the nozzle for selectively causing the nozzle to dispense the fuel at a discounted unit price;<br><br>a reader connected to the controller for reading data provided by a user and transferring the data to the controller; and<br><br>a database for creating and maintaining **a record associated with purchases made by the user, the record including the users [sic] achievement of a purchasing criteria;**<br><br>whereby upon receipt of the data, the controller accesses said record and causes the nozzle to dispense the fuel at the discounted unit price associated with the users achievement of the purchasing criteria. | A record associated with fuel and non-fuel purchases made by the user; the record including the users achievement of a purchasing criteria | a record associated with fuel or non-fuel purchases made by the user, the record including a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria. | a record associated with fuel or non-fuel purchases made by the user, the record including the user's achievement of a purchasing criteria. |

At dispute with respect to the '984 Patent is the term, "a record associated with purchases made by the user, the record including the users [sic] achievement of a purchasing criteria." This is the fourth step of the five steps of the system claimed in claim

1.   Kroger proposes that this term means "a record associated with fuel *or* non-fuel purchases made by the user, the record including a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria." Doc. No. 45-1, at 1 (joint claim construction chart) (emphasis added). Excentus proposes that this term means "a record associated with fuel *and* non-fuel purchases made by the user, the record including the user's achievement of a purchasing criteria." *Id.* (emphasis added).

The dispute between the parties over this term concerns two issues.  First, Kroger interprets this claim to address "fuel or non-fuel purchases" whereas Excentus interprets the claim to address "fuel and non-fuel purchases."  Second, Kroger's definition adds a further limitation to the term of  "a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria."

With regard to the first issue, the specification is somewhat ambiguous.  The Summary of the Invention states that when the customer completes a fuel transaction, "the controller notifies the reward system that the discount fuel has been purchased by the customer.  The reward system then updates the record for this customer accordingly." '984 Patent, col. 2, ll. 58-61.  The specification, in describing Figure 9, states that "[f]ield 310 will include data representing the availability of a fuel discount.  The record will be updated in field 312 when a discount is actually used by a customer and the discount amount is provided in field 314." *Id.*, col. 9, ll.45-48.  Similarly, the specification states that "record 208 shows that this customer took advantage of the discount and used it to purchase fuel on Jan. 20, 1999." *Id.* col. 10, ll. 1-3.   However, the summary of the invention allows "a

10

retailer to authorize discounted fuel or other marketing promotions. . .”  '984 Patent, col. 2, ll. 22-24.  Further, "the pump controller then adjusts the purchase price by subtracting the discount amount and allows the fuel to be dispensed at that rate for *this transaction only*."  '984 Patent, col. 2, ll. 52-54.

> "The record will be updated in **312** field when a discount is actually used by a customer and the discount amount is provided in field **314**.  Fields **316, 318** and **320** provide totals for the dollar value fields **304**, designated items purchased **306** and total quantity **308**, respectively.
>
> As an example, when A. Smith purchases $20 of merchandise on Jan. 5, 1999, record **208** is created by server **204** and stored in database **206**.  At that time three (3) designated items were purchased out of a total quantity of five (5) items.  These purchases did not meet the established criteria that would cause a discount on fuel to be made available.
>
> Then, on Jan. 17, 1999, A. Smith purchased five designed items, 10 total items for $15.00.  This purchase will cause the total designated item purchase by this customer to exceed five and cause a fuel discount to be offered.  Thus, field **310** will indicated that a fuel discount was offered to A. Smith on Jan. 17, 1999.  The discount amount is noted as $0.10 per gallon in field **314**.  As noted above, the mechanism by which the discount is offered may be a receipt with a bar code, updated magnetic card, alphanumeric authorization code, or the like.
>
> Further, record **208** shows that this customer took advantage of the discount and used it to purchase fuel on Jan. 20, 1999.  It will be understood that this data can then be analyzed to determine the success of the discount program.  That is, the predefined purchase criteria can be adjusted as needed to provide the discount for different items, different quantities of the items or a different discount amount."

'984 Patent, col. 9, ll.46; col. 10, ll.7.  Thus, the retailer is interested in what items appeal to the customer in terms of utilizing a fuel discount program.

Therefore, once that transaction is complete, the process system stores either fuel or non-fuel purchases to be applied to the next transaction.

With regard to the second issue, Kroger's addition of its proposed limitation to this

11

claim is improper.  As stated, Kroger interprets this term to include the limitation "a determination that the user is entitled to a discounted unit price based on a comparison of the user's purchases to predefined purchasing criteria."  The problem with Kroger's construction of the claim, as Excentus correctly argues, is that the limitation that Kroger seeks to add is effectively set forth in the last step of claim 1.  The fifth and last step recites that "whereby upon receipt of the data, the controller accesses said record and causes the nozzle to dispense the fuel at the discounted unit price associated with the users [sic] achievement of the purchasing criteria."  '984 Patent, col. 12, ll. 44-47.  As can be seen, when read together with the fourth step, the fifth step of claim 1 implicitly if not explicitly provides that the system makes a comparison of the customer's purchases to the predefined purchasing criteria, and authorizes fuel to be dispensed at a discounted price based on that comparison.  Kroger's importation of the limitation set forth in the fifth step of the claim into the fourth step of the claim renders the fifth step redundant.  Redundancy should be avoided when construing the terms of a patent.  *Bicon, Inc. v. Straumann Co.,* 441 F.3d 945, 950 (Fed. Cir. 2006) ( "[C]laims are interpreted with an eye toward giving effect to all terms in the claim.");  *Comark Commc'n, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (under doctrine of claim differentiation, there is a presumption that patents should not be construed to make a claim superfluous).

Accordingly, the Court concludes that the term "a record associated with purchases made by the user, the record including the users [sic] achievement of a purchasing criteria" means  "a record associated with fuel or non-fuel purchases made by the user, the record including the user's achievement of a purchasing criteria."

12

B. The '128 Patent

| '128 PATENT | EXCENTUS CORP | KROGER CO. | THE COURT |
|---|---|---|---|
| 1.  A method of providing multiple level discounts on a price-per-unit (PPU) of a consumable good sold in multiple units to a customer who purchases a plurality of cross-marketed products, said method comprising the steps of:<br>  awarding a first discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a first cross-marketed product;<br>  **awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product**;<br>  adding the first discount to the second discount to determine a total discount on the PPU of the consumable good; and<br>  awarding the total discount to the customer. | No Construction Required - Plain and Ordinary Meaning (except "discount")<br><br>If construed: awarding a second representation of reduction on the PPU of the consumable good to the customer in  response to a purchase by the customer of a second cross-marketed product | awarding a second product-specific reduction in a specified monetary amount on the price per unit of the consumable good to the customer in exchange for a purchase by the customer of a second predetermined product being marketed | "discount" means a reduction in a monetary amount<br><br>"awarding a second discount [as discount has been defined by the Court] on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product." |

At dispute on the '128 Patent are the terms "awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product" and "discount."  Generally speaking, claim 1 of the '128 Patent teaches combining multiple individual discounts into one total discount on a

13

consumable good in response to the customer's purchase of multiple cross-marketed products.

Excentus contends that the first term at issue, except for "discount," does not need construction and should be given its plain and ordinary meaning.  If the Court decides this term does need construction, Excentus argues that it means "awarding a second representation of reduction on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product."  Doc. No. 45-1 (joint claim construction chart), at 2-4.  Kroger argues that this term means "awarding a second product-specific reduction in a specified monetary amount on the price per unit of the consumable good to the customer in exchange for a purchase by the customer of a second predetermined product being marketed."  *Id.*  The parties then dispute the meaning of the term "discount."  Excentus argues that "discount" means "representation of reduction."  Kroger contends that "discount" means "reduction in a specified monetary amount."  Doc. No. 45-1, at 3.

The Court takes up the meaning of the term "discount" first.   The principal area of contention is that Kroger's definition limits "discount" to a "specified monetary amount." Excentus argues that "discount" is broader than Kroger's definition and also encompasses, for instance, discounts based on percentages or points.  Kroger, on the other hand, argues that "discount" must be reduced to a specific monetary amount otherwise it would be impossible to determine an adjusted price-per-unit of the consumable good.  Both sides make valid arguments about the meaning of this term.

First, the Court agrees with Excentus to the extent that "discount" should not be construed so as to limit or restrict the way in which the claimed method determines the

amount or value of the discount.  For instance, in addition to reductions based on cents-per-gallon, the specification of the '128 Patent also discusses calculating discounts based on the customer earning credits on a frequent shopping card.  '128 Patent, col. 1, ll. 40-52.  The customer's earned credits are applied to discount the PPU when he or she purchases gasoline.  *Id.*  Thus, the specification describes determining the discount based on a method other than a straight monetary reduction from the PPU.  Additionally, the method of calculating the discount should not be limited because there is no indication by the patentee that the method for determining the discount should not be given a broad scope.  *See Martek Biosciences Corp. v. Nutrinova, Inc.*, 379 F.3d 1363, 1381 (Fed. Cir. 2009) ("[C]laims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.") (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004)).  Moreover, the novel feature of the invention is not the method by which a discount is calculated, but rather, it is the combining of multiple discounts - however calculated - to determine a single PPU discount on a consumable good which is novel.  *See, e.g.*, '128 Patent, col. 1, ll. 57-60 ("An additional problem with existing systems and methods for tracking and allocating discount coupons is that they do not allow for cumulative savings based on the purchase of multiple cross-marketed products.").  Therefore, "discount" should not be interpreted to limit the method or manner in which the discount is actually determined.

Second, however, the Court agrees with Kroger that, whatever method for determining the discount is used, the discount ultimately has to be converted to a monetary

reduction in the PPU of the consumable good.   In other words, as Kroger has suggested, gasoline that is normally sold for $3.50 per gallon at the pump could not as a practical matter be sold at $3.50 less two credits per gallon.  The two credits must be converted to a monetary value so that the gasoline can be sold to the customer at a total discounted PPU.  The conversion of discounts into a specific monetary amount is implicitly if not explicitly described in Figure 3A of the '128 Patent.  At 44, Figure 3A states that the method will "RETRIEVE DISCOUNTS FROM DISCOUNTS ISSUED DATABASE AND RESIDUAL VALUE DATABASE."   At 45, the method will "CALCULATE TOTAL PPU DISCOUNT."   Read together, steps 44 and 45 reflect a process in which discounts, however otherwise determined, are converted into a total monetary price-per-unit discount, which in turn is deducted from the displayed PPU at step 46.   The process of converting the discount into a monetary value is reflected in the Summary of the Invention, where it states, "The total discount is retrieved from the discounts issued database, and the gasoline station then reduces the price-per-unit-volume of the gasoline by an amount equal to the total discount."  '128 Patent, col. 3, ll. 18-21.  Thus, according to the Summary of the Invention, the discount stored in the database - however it is determined - has a monetary value which is determined by the system and deducted from the PPU of the consumable good.

Therefore, the Court concludes that while the '128 Patent is not limited by the method in which a discount may be determined, "discount" itself means a reduction in a monetary amount.

With regard to the term "awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-

16

marketed product," the dispute concerns both "in response to" and "cross-marketed product."  As indicated, Excentus argues that these two terms should be given their plain and ordinary meaning.  Kroger, however, argues that "in response to" means "in exchange for" and that "cross-marketed product" means "predetermined product being marketed."  The Court concludes that Kroger's constructions of these two terms are not supported by the intrinsic evidence.

First, with respect to "in response to," the Court agrees with Excentus that Kroger's interpretation incorrectly suggests that the customer's purpose in purchasing the cross-marketed product is to obtain the fuel discount.  In other words, "in exchange for" suggests a quid pro quo is taught by the claimed method.  While the '128 Patent certainly teaches incentivizing the customer to purchase a cross-marketed product,[1] there is no indication that the customer's actual motivation in purchasing the product plays any part in the claimed method.  It is certainly possible that the customer would have purchased the cross-marketed product even if it were not tied to a discount in gasoline.  For instance, the customer's buying decision could be driven by brand loyalty and nothing else.  The customer, nevertheless, would still be awarded a discount for purchasing the cross-marketed product.  This conclusion is supported by Figure 1 and the specification, where it indicates that the "POS terminal **11** determines at **21** which purchases qualify for a price-per-unit (PPU) discount on gasoline.  A total PPU discount is then calculated by adding each individual PPU discount for which the customer has qualified."  '128 Patent, col. 5,

---

[1]For instance, the specification notes that "[o]ther products such as produce need to be sold fairly rapidly to avoid spoilage.  These products may also be targeted to provide gasoline discounts."  '128 Patent, col. 4, ll.  29-32.

ll. 22-26.  It is more accurate, therefore, to say the claimed method teaches the awarding of a discount as a reaction to the purchase of a cross-marketed product.  Moreover, the specification specifically states the system includes discounts that are not product-specific and instead are based on the total value of the customer's purchases.  '128 Patent, col. 4, ll. 15-25.  In this situation, the discount would not be offered "in exchange for" the customer's purchase of the cross-marketed product.  Therefore, Excentus's contention that "in response to" should be given its plain and ordinary meaning is logical and comports with the specification.

Kroger, however, contends that Excentus narrowed the scope of the claimed invention during the prosecution history in order to distinguish it from the Off reference. Kroger argues that when Excentus amended the original claim from "based on" to "in response to," it narrowed the claim so as to require a one-to-one correspondence between the purchase and the award, i.e., the award of the discount is made in exchange for the purchase of the cross-marketed product, and not for some other reason.  "When a patentee makes a narrowing amendment to a claim, the patent holder has the burden to demonstrate that the reason for the amendment was unrelated to patentability (*e.g.*, to avoid prior art)."  *Conoco, Inc. v. Energy & Environmental Intern., L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006).  Having reviewed the prosecution history, the Court does not view Excentus's amendment of "based on" to "in response to" to have been made for any reason related to patentability.  In other words, the amendment was not made in response to a rejection by the examiner.  *Deering Precision Instr., L.L.C. v. Vector Dist. Sys., Inc.*, 347 F.3d 1314, 1325 (Fed. Cir. 2003).  Therefore, prosecution history estoppel does not apply to limit or narrow the scope of "in response to."

18

It is true, as Kroger points out, that Excentus amended claim 1 from "based on" to "in response to" in its response to an Office Action in which the examiner rejected claim 1 as being anticipated by Off.  Subsequently, however, it appears that both the applicant and the examiner agreed that the claimed method was not in fact anticipated by Off.  *See* Doc. No. 45-7  (Prosecution History), at 69 ("In the interview conducted on July 17, 2001 . . . it was determined that Off is not a 102 reference because it does not cover all of the features of claim 1.").  Then, taking up the examiner's suggestion, the applicant amended the claims by combining claims 1 and 3, which made claim 1 allowable over the prior art.  *See id.* Therefore, to the extent the applicant amended claim 1 to overcome Off, it was by combining claims 1 and 3 and not by changing "based on" to "in response to."  Indeed, the applicant specifically stated that the amendment from "based on" to "in response to" was unrelated to the reasons for the examiner's initial rejection of claim 1.  *See id.* at 70-71. The Court concludes that Excentus did not narrow the scope of "in response to" during the prosecution of the '128 Patent application.   Accordingly, the Court concludes that "in response to" should be given its plain and ordinary meaning.

The final subissue on the '128 Patent is the definition of "cross-marketed product." Excentus again argues that this term should be given its ordinary meaning, i.e., "product that is cross-marketed."   Kroger proposes that "cross-marketed product" means "predetermined product being marketed."   The Court concludes that Kroger's definition of this term, particularly its incorporation or addition of the limitation "predetermined," makes the term redundant.  It is implicit in the concept of cross-marketing that at some earlier point a decision will have to be made about which products will trigger a discount on the consumable good.  In other words, pursuant to the claimed method, discounts are not

awarded randomly.  Therefore, by employing the term "cross-marketed," the claim already captures the idea advanced by Kroger's definition that the product or products that will trigger the discount are predetermined.   Kroger's proposed definition, therefore, is redundant.

Additionally, to the extent that Kroger's definition would limit claim 1 to product-specific discounts, it is not supported by the specification.   As stated above, the specification states that discounts can be tied to the total amount of the customer's purchases.  Similarly, the specification indicates that discounts can be offered based on the customer's purchases in a  class of products, such as bakery goods. '128 Patent, col. 4, ll.24-28, col. 8, ll.36-39.  Accordingly, the Court concludes that "cross-marketed product" should be given its plain and ordinary meaning.

In summary, the Court concludes that "awarding a second discount on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product" means "awarding a second discount [as discount has been defined by the Court] on the PPU of the consumable good to the customer in response to a purchase by the customer of a second cross-marketed product."

### C. The '204 Patent

#### 1. Claim 1 - "Dispensing an amount of free fuel ..."

20

| '204 PATENT | EXCENTUS CORP | KROGER CO. | THE COURT |
|---|---|---|---|
| 1.  A computer-implemented method of providing an incentive for a customer to purchase non-fuel products or services at a store that sells the products or services and fuel, said method comprising:<br><br>detecting that the customer purchased a number of non-fuel products or services in a first visit to the store; providing the customer with a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel products or services in the first visit;<br><br>detecting that the customer purchased a number of non-fuel products or services in a second visit to the store; providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit;<br><br>identifying the customer during a subsequent fueling transaction; and **dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel**. | No Construction Required - Plain and Ordinary Meaning (except "dispensing an amount of free fuel") | dispensing at no charge to the customer, rather than at a reduced unit price, a total amount of fuel equal to the sum of the first and second amounts previously awarded to the customer<br><br>"total" means sum | dispensing fuel at no charge to the customer, rather than at a reduced unit price, a total amount of fuel equal to the total of the first and second amounts of free fuel.<br><br>"total" means total and no construction is required |

At issue with respect to the '204 Patent is the term "dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel." Excentus again urges the Court to give this term its plain and ordinary meaning, except for the phrase "dispensing an amount of free fuel," which it contends means "providing some fuel at no charge."  Kroger proposes that this term means "dispensing fuel at no charge to the customer, rather than at a reduced unit price, a total amount of fuel equal to the sum of the first and second amounts previously awarded to the customer."  Kroger contends that during the prosecution of the '204 patent application, Excentus abandoned a construction of "free fuel" that would also encompass discounted fuel, or fuel at a reduced price, in order to overcome a rejection of the claim by the examiner as being anticipated by prior art.

A claim should not be construed so as to exclude embodiments disclosed in the specification; indeed, such constructions are "rarely, if ever, correct."  *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008).  In this case, although claim 1 of the '204 Patent recites "free fuel," the specification is replete with embodiments which tie a customer's purchases to awards of discounted fuel.  *E.g.*, '204 Patent, col. 9, ll.46-79 ("Then, on Jan. 17, 1999, A. Smith purchased five designated items, 10 total items for $15.00.  This purchase will cause the total designated item purchase by this customer to exceed five and cause a fuel discount to be offered.") (explaining Figure 9).  Kroger, however, argues that the prosecution history shows that the inventor of the '204 Patent viewed "free fuel" differently from "discounted fuel."  The Court agrees.

It is well-settled that statements made during the prosecution history of a parent application can limit the scope of a latter application using the same term.  *Augustine Med.,*

22

*Inc. v. Gaymar Ind., Inc.*, 181 F.3d 1291, 1300 (Fed. Cir. 1999).   In this case, the '204

Patent is a divisional patent of the 10/679,860 Application ("the '860 Application").

Therefore, the applicant's statements in prosecution of the '860 Application are relevant

to construing the '204 Patent.  As Kroger accurately argues, review of the '860 Application

shows that the applicant viewed "free fuel" and "discounted fuel" as distinct concepts.

In August 2006, the applicant submitted to the Patent and Trademark Office

amendments to the '860 Application which canceled claims 1-44 and added claims 45-57.

As is relevant here, new independent claim 45 recited:

> A computer implemented method of providing an incentive for a customer to purchase non-fuel products at a store that sells the products and fuel, said method comprising:
>
> recognizing that the customer purchased a number of non-fuel products in a first visit to the store;
>
> providing the customer with a first reward receipt as a reward for purchasing the non-fuel products in the first visit, said first reward receipt having bar coded data imprinted thereon, said data indicating the customer is entitled to a first amount of *free fuel*;
>
> recognizing that the customer purchased a number of non-fuel products in a second visit to the store;
>
> providing the customer with a second reward receipt as a reward for purchasing the non-fuel products in the second visit, said second reward receipt having bar coded data imprinted thereon, said data indicating the customer is entitled to a second amount of *free fuel*;
>
> scanning the first and second reward receipts by a bar code reader at a fuel dispenser; and
>
> dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel;

Doc. No. 58-1, at 2 (emphasis added).  As can be seen, claim 45 of the '860 Application

is substantially the same as claim 1 of the '204 Patent, the main difference being that the

23

'204 Patent deleted the limitation that the reward be provided in the form of a receipt with a bar code imprinted thereon, a limitation not at issue here.   Then, independent claim 49 of the '860 Application recited:

> A computer implemented method of varying the price of fuel to provide fuel at a lower price-per-unit to a customer with a store membership card, said method comprising:
>
> reading an identifier from a customer's store membership card at a fuel dispenser;
>
> identifying an account and an appropriate *price-per-unit discount* associated with the identifier; and
>
> dispensing fuel to the customer at a *price-per-unit discount* discounted by the appropriate *price per unit discount.*

Doc. No. 58-1, at 3 (emphasis added).  Claims 45 and 49 introduced distinct concepts: providing *free fuel* to a customer as a reward for purchasing non-fuel products and providing *discounted fuel* to a customer as a reward for participating in a membership card program.

In a final office action dated October 2006, the examiner, *inter alia*, withdrew from consideration independent claim 45, and the claims depending therefrom, "as being directed to a non-elected invention." Doc. No. 58-2, at 4.   The final office action indicates, therefore, that the examiner determined that the '860 Application claimed more than one invention, and, more specifically, that claim 45 and claim 49 were different inventive ideas. *See* 35 U.S.C. § 121 ("If two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions."); 37 C.F.R. § 1.142(a) ("If two or more independent and distinct inventions are claimed in a single application, the examiner in an Office action will require the applicant

24

in the reply to that action to elect an invention to which the claims will be restricted, this official action being called a requirement for restriction (also known as a requirement for division)."); MANUAL OF PATENT EXAMINING PROCEDURE § 802.02 ("Restriction is the practice of requiring an applicant to elect a single claimed invention (e.g., a combination or subcombination invention, a product or process invention, a species within a genus) for examination when two or more independent inventions and/or two or more distinct inventions are claimed in an application.").  The examiner then rejected claims 48 and 49 as being anticipated by Hisey.  *See* Doc. No. 58-2, at 4-5.

Thus, the prosecution history is clear that the patent examiner viewed the '860 Application as claiming two distinct inventions, one offering free fuel to customers as a reward for purchasing non-fuel items and one offering fuel at a discounted PPU to individuals who joined a store membership club.  It is not clear on what basis the examiner determined that the '860 Application claimed more than one invention.  Critically, however, between the two distinction inventions initially disclosed in the '860 Application, the applicant further differentiated offering free fuel as a reward from offering discounted fuel as a reward.  Since the '204 Patent is a divisional patent from the '860 Application, the only reasonable conclusion is that "free fuel," as claimed in the '204 Patent, does not encompass "discounted fuel" or "fuel offered at a discounted PPU."

Excentus's *Markman* hearing materials argue that the intrinsic evidence shows that the patentee did not envision offering fuel as a gift to the customer.  Excentus *Markman* Hearing Presentation, Slides 46-49.  The intrinsic evidence, however, explicitly refutes that argument.  The specification specifically sets forth a scenario wherein the customer purchases several items and receives a receipt entitling him to receive free $1 worth of

25

gasoline. The customer then accumulates four more $1 coupons in subsequent visits and then pools his receipts together so that the fuel dispenser dispenses $5 worth of gasoline. '204 Patent, col. 6, ll. 53-64. In this example, the gasoline is in fact a pure gift to the customer. Excentus also argues that the '204 Patent expresses the concept of "free fuel" as a volume and not as a price, apparently because the claim recites dispensing "an amount of free fuel." But, in the example just cited, the system in fact dispensed "free fuel" to the customer and not just "an amount of free fuel" to the customer. While Excentus argues that if the patentee had wanted to claim "free fuel" instead of "an amount of free fuel" he would have done so, he could have just as easily claimed "discounted fuel" or "fuel at a discounted PPU" if he wanted the invention to cover discounted PPU fuel. As just recounted, the prosecution history shows that the applicant was aware of and in fact made a distinction between free fuel and discounted fuel. Accordingly, the Court concludes that "free fuel" does not include "fuel offered at a discounted PPU."

Finally, however, Kroger's addition of the limitation "previously awarded to the customer," to this term is superfluous. It is implicit in the final step of the method that when the system dispenses "an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel" that the total award of free fuel is based on the free fuel previously awarded to the customer.

In summary, the Court concludes that the term "dispensing an amount of free fuel to the customer equal to the total of the first and second amounts of free fuel" means "dispensing fuel at no charge to the customer, rather than at a reduced unit price, a total amount of fuel equal to the total of the first and second amounts of free fuel."

The next issue is the definition of "total," which Excentus argues should be given its

26

plain and ordinary meaning, whereas Kroger contends that "total" means "sum of."  The Court sees no reason to modify the claim so that "total" is construed as "sum of."  Indeed, "total" is synonymous with "sum." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971), at 2414.

2. <u>Claim 7 - "Means for providing . . ."</u>

| '204 PATENT MEANS | EXCENTUS CORP. | KROGER CO. | THE COURT |
|---|---|---|---|
| **means for providing the customer with a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel products or services in the first visit, and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit;**<br><br>Claim limitation is subject to 35 U.S.C. 112, paragraph 6 (i.e., means-plus-function element.) | Meets statutory requirements and is definite with respect to structure and algorithm | Claim is indefinite | meets statutory requirements and is definite with respect to structure and needs no further construction |

Claim 7 recites a means-plus-function claim which is at issue:

means for providing the customer a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel product or services in the first visit and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for

purchasing the non-fuel products or services in the second visit.

'204 Patent, col. 14, ll. 27-31.

Whether a claim is expressed in a means-plus-function format is a question of claim construction for the trial court. *Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000). If the court determines that the claim is a means-plus-function claim, it must determine what the claimed function is and identify the structure or structures disclosed in the specification that perform the claimed function. *Id.* A means-plus-function claim will be invalid for indefiniteness if the specification fails to disclose sufficient structure to perform the claimed function. *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). In this case, the parties agree that claim 7 is a means-plus-function claim. They further seem to agree that the function expressed in claim 7 is "providing the customer a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel product or services in the first visit and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit."

The parties' claim construction briefs focus on whether the specification sets forth an algorithm - particularly in Fig. 10 - sufficient to constitute the structure needed to perform the claimed function, but as the Court reads the patent, sufficient structure is disclosed by reading the written specification in conjunction with Fig. 8 and Fig. 10. *See Budde v. Harley Davidson, Inc.*, 250 F.3d 1369, 1379 (Fed. Cir. 2001) ("The specification must be read as a whole to determine the structure capable of performing the claimed

28

function.").  In describing Fig. 8, which sets forth the various components needed to practice the claimed method, such as the point-of-sale ("POS") terminal 200, the server 204, database 206, and pump 112,  the specification states:

> A server data processing system **204** is shown and coupled with POS **200**. *Server* **204** *may be a commercially available workstation computer from one of the various computer manufacturers, such as Compaq Computer, IBM, Hewlett Packard, or the like.*  A database **206** is linked to server **204** and *includes multiple records* **208** *that correspond to customers purchasing items through POS* **200**.  It should be noted that many POS terminals **200** are contemplated as being connected to server **204** and may be distributed remotely across more than one store.  *Server* **204** *will include software that manages the transactions occurring on POS* **200**, *as well as records 208 in database* **206**.  *In a preferred embodiment, database* **206** *may be magnetic storage media, optical storage or the like.*

'204 Patent, col. 8, ll. 7-20 (emphasis added).  In Fig. 10, which describes the steps of the method, the drawing indicates that when the customer purchases an item, the data will be provided to the server, which will update the database, and then analyze whether the customer has earned a discount.

Reading these sections together, the specification indicates that the structure needed to perform the function of "providing the customer a first reward entitling the customer to a first amount of free fuel in exchange for purchasing the non-fuel product or services in the first visit and for providing the customer with a second reward entitling the customer to a second amount of free fuel in exchange for purchasing the non-fuel products or services in the second visit" is a commercially available workstation computer capable of reading a database using magnetic storage media or optical storage media, or some similar database storage media.  In this regard, the specification of the '204 Patent is similar to the one at issue in *Budde*, wherein the court held that the specification disclosed

29

sufficient structure to perform the function of measuring the vacuum in the intake manifold by reciting use of "a commercially available vacuum sensor." *Budde*, 250 F.3d at 1381-82. Similarly, in this case, recital of a "commercially available work station computer" coupled to a "database storing data in magnetic storage media or optical storage media" would sufficiently indicate to a person skilled in the art the structure needed to perform the claimed function. In any event, as the party alleging insufficient disclosure of structure in the specification, Kroger bears the burden of proving indefiniteness, and therefore invalidity, by clear and convincing evidence. *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008). Kroger has not proffered any evidence as to how a person skilled in the art would understand the specification in this case. Consequently, the Court cannot conclude at this point that claim 7 is invalid for indefiniteness. *See Budde*, 250 F.3d at 1382 (affirming district court's finding that claim disclosed sufficient structure; defendant's expert's testimony failed to show by clear and convincing evidence that person skilled in the art would not understand scope of claim in light of specification).

Other than the definition of "free fuel," which the Court has previously resolved, the plain and ordinary meaning of this term is the most accurate. The claim means what it says it means, there is a "means providing the customer a first reward entitling the customer to a first amount of free fuel [as defined by the Court] in exchange for purchasing the non-fuel product or services in the first visit and for providing the customer with a second reward entitling the customer to a second amount of free fuel [as defined by the Court] in exchange for purchasing the non-fuel products or services in the second visit". The other addition or limitation that Kroger would add to this term, "upon detection that the customer purchased the pre-defined threshold quantity of non-fuel goods or services" is

30

already implicit if not explicit in the claim. Therefore, this addition or limitation is superfluous.

D. The '942 Patent

1. Preambles to Claim 1 and 9 - "increasing customer use ..."

| '942 PATENT | EXCENTUS CORP | KROGER CO. | THE COURT |
|---|---|---|---|
| Preambles to Claim 1 and 9 of '942 Patent:<br><br>1. A computer-implemented method of discounting a price-per-unit (PPU) of fuel at a fuel merchant and **increasing customer use of third-party financial cards issued by a plurality of third-party issuers**, wherein the third-party financial cards are selected from a group consisting of credit cards and debt cards, said method comprising:<br><br>9. A system for discounting a price-per-unit (PPU) of fuel at a fuel merchant and **increasing customer use of a third-party financial card issued by a third-party issuer,** wherein the third-party financial card is selected from a group consisting of different issuers of credit cards, said system comprising: | No construction Required - Plain and Ordinary Meaning<br><br>If construed: increasing customer use of third-party financial cards issued by more than one third-party issuer | increasing use of multiple, different payment cards issued to customers by multiple, different issuers that are unrelated to the fuel merchant. | No construction required. Plain and ordinary meaning |

Kroger contends that the preambles to claims 1 and 9 of the '942 Patent impose limitations on the claims therein because Excentus amended the preambles during the prosecution history to overcome prior art cited by the examiner.  Generally speaking, claims 1 and 9 claim a method and system for awarding a PPU fuel discount based on the customer's use of a third-party financial card.  Additionally, another claimed purpose of the invention is to increase a customer's use of third-party financial cards.

The preamble to claim 1 states:

> A computer-implemented method of discounting a price-per-unit (PPU) of fuel at a fuel merchant and increasing customer use of third-party financial cards issued by a plurality of third-party issuers, wherein the  third-party financial cards are selected from a group consisting of credit cards and debt cards, said method comprising:

'942 Patent, col. 6, ll. 49-54.  The preamble to claim 9 states:

> A system for discounting a price-per-unit (PPU) of fuel at a fuel merchant and increasing customer use of a third-party financial card issued by a third party-issuer, wherein the third-party financial cards are selected from a group consisting of different issuers of credit cards, said system comprising:

*Id.* col. 7, ll.56-60.  Kroger argues that during the prosecution history, Excentus amended the preambles in such a way that the claimed invention requires multiple third-party financial card issuers instead of a single credit card issuer.  In other words, Kroger contends that the claimed invention does not cover systems in which the fuel discount is related to only a single third-party credit card issuer.

The Court finds that the preamble does not limit claims.  The prosecution history indicates that the examiner, in allowing the claims, did not require the invention to claim multiple financial card issuers.  Indeed, the examiner's reasons for allowance indicate that the claims cover a system or method involving only a single credit card issuer:

> The prior art taken alone or in combination does not teach the combinations of the claimed limitations, as recited in independent claims 1 and 11, or more particularly the method of reading a customer's credit card during a fueling transaction, identifying a third-party issuer of a financial card and a specific PPU (price per unit) discount on fuel stored in a database under the financial card issuer and providing a specific price-per-unit (PPU) or price per gallon (PPG) discount on fuel to the customer as specified by the issuer during a fuel transaction at a participating fuel merchant.  Thus, claims 1, 2, 4-9, 11-16, 27 and 28 are said patentable over the prior art of record.

Doc. No. 45-12, at 14.  Note that in the above passage, the examiner's references to the financial card issuer are in the singular.  Therefore, the logical inference is that the examiner allowed the claims over the prior art even though the claimed method might only cover a single third-party financial card issuer.

While Kroger argues that Excentus amended the preambles to overcome Hisey, the examiner's reasons for allowance do not mention Hisey as a prior art reference, suggesting that amending the preambles did not factor into the examiner's reasons for allowing the claims.  *See also* Doc. No. 45-12, at 66 (examiner disclaimed reliance on Hisey in initially rejecting claims).  Additionally, the examiner denied reading limitations from the preamble into the claim.  *Id.*  Therefore, it appears that the applicant did not amend the preambles in order to overcome Hisey.

Moreover, the amendments make clear that invention is not *limited* to one credit card, as opposed to the invention *requiring* more than one credit card.  In other words, the amendments were to make clear that invention applies to one or more credit cards, and not just a single credit card.  Doc. No. 45-12, at 72 ("Claims 1 and 11 have been previously amended to make clear that there *can be* multiple credit card issuers and each issuer can have an independent PPU discount.") (emphasis added).  Stated another way, the

amendments make multiple credit card issuers a permissive aspect of the invention, not a mandatory aspect of the invention.   Moreover, Hisey discussed store-branded cards, which by definition, only relate to a single issuer.  *See id.* at 73 ("Since Hisey deals with a store card there can be only one store card and thus more than one card can not [sic] be associated with the store.").   Therefore, had the claims been specifically limited to one credit card issuer, as the examiner apparently initially believed, it would not have been distinguishable from Hisey.   Reading the entire prosecution history, however, the examiner seemed to recognize that the prior art does not teach entering into affinity agreements with a plurality of credit card issuers, as claimed by claims 1 and 9.  *E.g.,* Doc. No. 45-15, at 32. The prosecution history, therefore, is less than clear that in amending the preambles, the applicant surrendered methods or systems which cover only a single third-party credit card issuer.   Indeed, it seems more likely that the amendments were - just as the applicant's accompanying statements indicate - simply to clarify that the claims were in fact broader than the prior art because they also cover systems or methods involving multiple financial card issuers.   In summary, therefore, the Court concludes that the preambles do not impose limitations on the claims.  *Symantec Corp. v. Computer Assoc. Int'l., Inc.*, 522 F.3d 1279, 1288 (Fed. Cir. 2008) ("Absent clear reliance on the preamble in the prosecution history [to distinguish the claimed invention from the prior art] . . .the preamble generally is not limiting.") (internal quotation marks omitted).

Since the preambles to Claims 1 and 9 are not limiting, they do not need further construction by the Court.  *See Allen Eng'g Corp. v. Bartell Ind., Inc.*, 299 F.3d 1336, 1346-47 (Fed. Cir. 2002) (holding that preamble to claim of patent-in-suit only set forth intended purpose of claimed combination, therefore, preamble should not be given limiting

meaning).

2. <u>Claim 1 - "associating the identified third-party issuer ..."</u>

| '942 PATENT | EXCENTUS CORP | KROGER CO. | THE COURT |
|---|---|---|---|
| **associating the identified third-party issuer of the financial card with the stored PPU discount for the fuel** | associating the proper per unit discount with each issuer | associating the identity of the third-party financial card issuer with the stored price per unit reduction in a specified monetary amount to which the customer is entitled for using the third-party issuer's financial card, where the third party issuer is unrelated to the fuel merchant | Associating the proper per unit discount with each financial card issuer. |

Having concluded that the preambles do not limit claims 1 and 9, the task remaining is to define the term "associating the identified third-party issuer of the financial card with the stored PPU discount for the fuel."   The proper definition of this term is, in the Court's opinion, fairly self-evident.  The gist of the invention is that an individual discount will be associated with the financial card of each third-party financial card issuer. *See* '942 Patent, Abstract ("[T]he invention identifies an issuer of the customer's credit card, associates the issuer with a PPU discount for the fuel, and discounts the posted PPU by an amount equal to the PPU discount associated with the identified credit card issuer."); *id.* col. 3, ll. 27-29 ("In one embodiment, the present invention provides a PPU discount for fuel based on the type of credit card or the issuer of the credit card utilized to purchase fuel.").  Accordingly, the Court concludes that this term means "associating the proper per unit discount with

each financial card issuer."

      **IT IS SO ORDERED**.


                             */s/ Michael R. Barrett*
                             United States District Judge